In re Douglas **BRAY**, Debtor.

Douglas **BRAY**, Plaintiff,

v.

Jimmy **HOLLEY**, Individually and d/b/a Elba Tractor Company; and State of Alabama, Defendants.

Bankruptcy No. 81–0163.

United States Bankruptcy Court, M. D. Alabama.

June 24, 1981.

---

**360**

Harry H. Perdue, Jr., Montgomery, Ala., for plaintiff.

Jimmy Holley, pro se.

OPINION GRANTING INJUNCTION

RODNEY R. STEELE, Bankruptcy Judge.

On May 20, 1981, the Plaintiff, Debtor in this proceeding, filed a Complaint seeking an Order restraining and enjoining the Defendants from proceeding with criminal prosecution in the District Court of Coffee County, Alabama, Case No. DC 81–148 and Case No. 81–149, for the issuance of worthless checks in the amount of $1,630.00 given for a disc harrow purchased on February 29, 1980, and in the amount of $1,167.25 for a grain wagon dated February 29, 1980.

The thrust of the Complaint is that the Defendant, Jimmy Holley is using the criminal process of the State of Alabama for the purpose of collecting debts which are dischargeable in these bankruptcy proceedings.

By an Order entered on May 21, 1981, a Temporary Restraining Order issued against the Defendants, staying any further criminal prosecution until a hearing before the Bankruptcy Court on June 1, 1981, at 2:00 p. m., at Montgomery.

Notice was supplied to the Debtor and his attorney, to the Trustee, to the Defendants, to United States Attorney, to the Judge of the District Court of Coffee County, Alabama, at Enterprise.

Thereafter certificate of service was returned showing service on the Trustee, the Defendant, Jimmy Holley, Individually and d/b/a Elba Tractor Company and upon the Judge of the District Court of Coffee County.

Then on May 26, 1981, the Defendant Jimmy Holley answered saying that the claim of the Defendant against the Debtor arises out of a criminal matter, namely two worthless checks, presented, drawn or delivered by the Debtor in violation of the Alabama Worthless Check Act, and was not subject to injunction by the Bankruptcy Court.

At the appointed time and place the Complaint for an injunction came on for hearing in accordance with the Summons and Notice of Trial. Present was the Defendant Jimmy Holley, the Plaintiff and his attorney. No persons appeared on behalf of the State of Alabama.

Testimony was taken from the Plaintiff Douglas Bray and from the Defendant Mr. Holley.

Exhibits introduced and admitted into evidence consists of Defendant's Exhibits 1, 2 and 3 consisting of three deposit tickets at the Peoples Bank of Elba, Alabama, dated March 1, 1980, March 6, 1980, and March 28, 1980.

The facts may be summarized as follows. During the winter of 1979–1980, Mr. Bray who is a farmer, made arrangements with Mr. Holley who operates Elba Tractor Company to purchase a disc harrow and a Paulk grain wagon. These purchases were apparently made at different times during that winter. Mr. Bray told Mr. Holley at the time he purchased these items that he did not have the money at that time to make payment for them, but that he would shortly be approved for a $60,000.00 loan from Farmers Home Administration for farming in the 1980 season, and that the money appropriated under that loan for the payment of equipment would be used to pay Mr. Holley.

Mr. Bray testified that he had assurances that of the $60,000.00 authorized by Farmers Home Administration for his crop year 1980, $6,000.00 would be earmarked for equipment.

When the loan came through, it did not contain an authorization for $6,000.00 for equipment purchase or repair.

Mr. Holley testified that he did not understand that he was to be paid out of any special funds, such as an earmarked fund from Farmers Home Administration.

Bray also testified that he told Mr. Holley in the early Spring of 1980 that Walls, the local agent for Farmers Home Administration, had told him that he did not have the money earmarked although Walls had promised Bray that the money would be available for the disc.

Mr. Holley in efforts to collect for these items of farm equipment, then sought to have Mr. Bray to execute checks to him for payment. On February 28, 1980, Bray did execute two checks, one in the amount of $1,630.00 for payment on the disc harrow, and one in the amount of $1,167.25 in payment for the grain wagon. These checks were post-dated. The first one was to be presented on March 1, 1980, at the bank and according to Mr. Bray, Mr. Holley was to hold the second check until March 15, when there was to be sufficient money in the bank to cover this check.

When the checks were presented there was not sufficient money to pay them.

There were other conversations between Mr. Bray and Mr. Holley apparently running through until the Fall of 1980. One of the conversations involved a re-presentment of the checks to the bank for payment and on March 28, 1980, both checks were again

presented but were not paid. See Defendant's Exhibit 1.

Mr. Holley recovered the disc harrow in February of 1981. There is some question about the location or recovery of the Paulk grain wagon which needed some repairs.

Holley apparently made efforts at collection through the rest of 1980, and was unsuccessful. On February 28, 1981, Holley swore out the warrants above described for the utterance of worthless checks. On March 27, 1981, the Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code and notified Mr. Holley as a creditor.

Mr. Bray suffered a total loss of his crops in 1980, and the Farmers Home Administration declined to finance his farming operations in the year 1981.

Thereafter the prosecuting authorities in Coffee County and Mr. Holley have pressed the criminal prosecutions against Mr. Bray, which has given rise to this application for an injunction against such criminal prosecution.

## CONCLUSIONS

■ Although the Federal Bankruptcy law and the State law relating to the prosecution for the utterance of bad checks has changed since we last treated this question, the conclusion must be the same under the new laws, that is, where the necessary effect of a criminal prosecution is to enforce the collection of a debt discharged in bankruptcy, the Bankruptcy Court is justified in protecting its Order of Discharge by enjoining the parties to a criminal prosecution from further action. See *Evans v. Godfrey*, DC MD Ala.1979, 472 F.Supp. 364.

· In that case, this Court enjoined the further prosecution in Montgomery County, Alabama of the Bankrupt Ernest Gordon Godfrey, Sr., for utterance of worthless checks totalling $31,000.00, when the obvious purpose of the prosecution was to enforce the collection of those checks by the holders.

That case was decided under the provisions of the Bankruptcy Act of 1898 and the Code of Alabama 1975, Sections 13–4–110 through 123.

■ The 1898 Bankruptcy Act authorized the issuance of injunctions for the protection of Bankruptcy Orders, but under Title 28 U.S.Code § 2283, a Court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of his jurisdiction, or to protect or effectuate its judgments. On that basis, this Court had declined to enjoin State criminal prosecution except to the extent necessary for the protection of its Discharge Orders. See *Evans v. Godfrey*, cited Supra.

■ Under the Bankruptcy Code of 1978, Section 362(b) (11 U.S.C. § 362) the automatic stay does not stop the commencement or continuation of a criminal action or proceeding against the Debtor. The provisions of Section 2283 of Title 28 are also still in effect.

■ And there is no doubt, as there was no doubt under the 1898 Act, that this court may not enjoin another Court. See Title 28 U.S.C. Section 1481 as amended in 1978.

■ But the Bankruptcy Court still has those same powers which a Bankruptcy Court had under the 1898 Act, including the power to issue any Order, Process or Judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code of 1978. See Title 11 U.S.C. Section 105(a).

The principal change in the State law which has occurred is the enactment of the Alabama Criminal Code effective May 17, 1978. The so-called Worthless Check Act of Alabama codified in the 1975 Code of Alabama at Sections 13–4–110 through 123, was eliminated in the 1978 Criminal Code and replaced by Section 13A–9–13 relating to the negotiating of worthless negotiable instruments. While the same presumptions of fraud are raised upon the dishonor of checks, as against the maker under that provision, some additional requirements relate to the payment of a $10.00 penalty, and

the negotiating of a worthless negotiable instrument is only a Class A misdemeanor under the new Code; there is no provision for imposing the penalties of a felony.

Section 13A–9–13 of the Alabama Criminal Code, is repealed by Acts 1980, Number 80–200 Section 5, effective April 15, 1980, and is now codified as Section 13A–9–13.1 through 13.3.

The Criminal Code of 1978 in Alabama, according to the Code Commissioner's note also repealed by implications the provisions of Section 13–4–123 which required, upon a conviction for the utterance of a worthless check, the imposition of restitution in addition to any other penalties imposed by the trial court.

And while this specific restitution provision was repealed by implication, it was re-enacted in a broader form by the Alabama Legislature in Acts 1980, Number 80–588, et seq., particularly that section now codified as Section 15–18–67 which we quote with emphasis here:

> Section 15–18–68. Restitution hearings; Order of Restitution; Persons entitled to be heard when a defendant is convicted of a criminal activity or conduct which have resulted in pecuniary damages or loss to a victim. The court *shall* hold a hearing to determine the amount or type of restitution due the victim or victims of such defendant's criminal acts. Such restitution hearing *shall* be held as a matter of course and in addition to any other sentence which it may impose, the court *shall* order that the defendant make restitution or otherwise compensate such victim for any pecuniary damages ....

The State court judge then in any prosecution for worthless checks under the present Alabama Criminal Code, must upon conviction impose restitution in addition to any other penalties. The results of such restitution, where the Debtor is a bankrupt, is to enforce the collection of a debt discharged in bankruptcy. In such case, the State court has enforced by indirection a debt which cannot be enforced directly at the State or Federal level. Such enforcement by the State courts in a criminal

prosecution may also be an unconstitutional application of the statute relating to worthless checks when employed to collect a civil debt. See *Tolbert v. The State*, 294 Ala. 738, 321 So.2d 227, 232 (1975).

The Effect in this case then of permitting the Defendant to prosecute the Plaintiff in the District Court of Coffee County, Alabama, or in any State Court, under the Alabama Worthless Check Statute is to collect, upon a conviction, the debts represented by the two checks issued in this case where such debts are not collectible after the discharge of this Debtor in bankruptcy. The Order of Discharge is then to the extent impaired and this Court has the obligation to protect that Order of Discharge when it is so impaired.

The injunction in this case cannot run against the Judge of the District Court of Coffee County, Alabama, since this Court, as noted above, cannot enjoin another court. And since it appears that no service was had upon the District Attorney of Coffee County, this injunction may not be effective against him unless and until he is brought in by amendment or by separate petition.

A separate Order will enter which will make permanent the injunction against the Defendant Jimmy Holley, Individually and d/b/a Elba Tractor Company and this Debtor.