**In re ALAN I. W. FRANK CORPORATION, Debtor.**

**ALAN I. W. FRANK CORPORATION, Plaintiff,**

v.

**P. M. A., INC., Defendant.**

**Bankruptcy No. 81–02080G. Adv. No. 82–0055G.**

United States Bankruptcy Court, E. D. Pennsylvania.

April 9, 1982.

Howard T. Glassman, Wexler, Weisman, Forman & Shapiro, Philadelphia, Pa., for plaintiff/debtor, Alan I. W. Frank Corp.

Robert Boyd, Jr., Huntingdon Valley, Pa., for defendant, P.M.A., Inc.

Alexander Rubin, Fell, Spalding, Goff & Rubin, Philadelphia, Pa., for Creditors' Committee.

Samuel Alper, Trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether we should enjoin the continuation of a criminal proceeding in the state courts brought by a creditor against the debtor corporation and its president for allegedly issuing a bad check. We conclude that the state criminal proceeding should be enjoined because we find that the real motive behind that prosecution is to collect a prepetition corporate debt and that to allow a continuation of that action would unduly interfere with the administration of the debtor's estate.

The facts of the instant case are as follows:[1] On June 1, 1981, the Alan I. W. Frank Corporation ("the debtor") filed a petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code"). On October 9, 1981, P.M.A., Inc. ("P.M.A.") instituted a criminal action in the state courts against the debtor and its president alleging that, on May 29, 1981, three days before it filed its petition, the debtor had "issued or passed a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee." On January 12, 1982, the debtor filed the instant complaint to enjoin the continuation of the above criminal action by P.M.A.

Although the commencement or continuation of criminal proceedings against a debtor is not subject to the *automatic* stay provisions of the Code,[2] the majority of the bankruptcy courts to address this issue have held that they do have the power, under § 105(a) of the Code, to enjoin such proceedings in certain circumstances.[3] The courts have split, however, on what circum-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. In this regard, § 362(b)(1) of the Code states:
   (b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—
   (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor
   11 U.S.C. § 362(b)(1).

3. The courts have relied upon § 105(a) of the Code as authority for such injunctive power. That section provides:
   (a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.
   11 U.S.C. § 105(a). *See, e.g., In re Strassmann,* 18 B.R. 346 (Bkrtcy.E.D.Pa. March 16, 1982); *In re Taylor,* 16 B.R. 323, 8 B.C.D. 692 (Bkrtcy.D.Md.1981); *In re Bray,* 12 B.R. 359 (Bkrtcy.M.D.Ala.1981); *In re Lake,* 11 B.R. 202 (Bkrtcy.S.D.Ohio 1981); *In re Reid,* 9 B.R. 830, 4 C.B.C.2d 196 (Bkrtcy.M.D.Ala.1981); *In re Barth,* 4 B.R. 141, 2 C.B.C.2d 1030 (Bkrtcy.W. D.Mo.1980). *But see, In re Anson,* 9 B.R. 741 (W.D.Mo.1981) (in which the bankruptcy court held that the power given by § 105 to enjoin criminal prosecution could only be exercised by the district courts during the transition period).

stances necessitate the invocation by the bankruptcy court of its power to enjoin a criminal prosecution.

In two cases, the courts have held that the bankruptcy court should rarely, if ever, interfere with a state criminal prosecution. *In re Davis*, 15 B.R. 442 (Bkrtcy.D.Del. 1981); *In re C. H. Stuart, Inc.*, 12 B.R. 85, 7 B.C.D. 1013 (Bkrtcy.W.D.N.Y.1981). In *Davis*, the court held that it should not enjoin state criminal proceedings against the debtor for allegedly issuing bad checks even though restitution is mandatory upon conviction of such a crime. The *Davis* court stated that

> A court that has no criminal jurisdiction should rarely, if ever, issue a permanent injunction against the enforcement of the criminal law. The issuance of a bad check with knowledge is a criminal act. The mere possibility that a creditor may recover all or part of a discharged debt only after a debtor's conviction does not thwart the purposes of the bankruptcy laws.

15 B.R. at 443. Likewise, in the *Stuart* case, the bankruptcy court refused to enjoin a criminal proceeding for theft of services even though it acknowledged that that proceeding was largely civil in nature. In so doing, the court held that:

> When the State defines an act as criminal, this Court will not deem it to be otherwise. Simply put, if a debtor intentionally avoids payment for restaurant services, he may become a debtor thereby, but he is also a thief in the State of New York. A thief cannot escape criminal sanctions by filing bankruptcy and listing his victim on his schedule of unsecured creditors.

12 B.R. at 86, 7 B.C.D. at 1013.

Most courts, however, have been more willing to enjoin state criminal prosecutions especially where such actions are commenced by creditors for the purpose of collecting debts which may be dischargeable, thereby obtaining a preference over other creditors, or where the continuation of the criminal proceedings will otherwise unduly interfere with the administration of the debtor's estate or with the debtor's rights under the Code.

■ In *In re Strassmann*,[4] Judge Twardowski enjoined a creditor from continuing with a state criminal action against debtors based on an alleged bad check. In so doing, Judge Twardowski wrote:

> Our inquiry is directed to the need or appropriateness of injunctive relief to further the purposes of the Bankruptcy Code. If the state criminal prosecution were permitted to proceed, defendant [creditor] would be able to subvert the intent of the legislators of the Code to provide the debtors with a fresh start. The defendant concedes that an order of restitution is a common result of bad check proceedings and one which it would welcome. The plaintiff [debtor] would be placed in the position of paying this admittedly dischargeable debt or facing imprisonment for contempt for failure to make restitution. Defendant would have gained an unfair advantage over other unsecured creditors by means of this sentence. In order to avoid this result, the state court proceeding must be enjoined.[5]

The court in *In re Taylor*[6] stated that the test in determining whether a state criminal proceeding should be enjoined is the purpose behind that criminal action:

> The important inquiry is therefore a determination of what circumstances warrant an injunction under § 105 restraining a criminal prosecution against a Debtor. The nature of the moving force behind the institution of the criminal proceeding is the determinative factor. Prosecutions instituted primarily to vindicate the public welfare by punishing criminal conduct of the Debtor and to discourage similar conduct of others are not usually interferred with by Bankruptcy Courts. When it is clear that the

---

4. *In re Strassmann*, 18 B.R. 346 (Bkrtcy.E.D.Pa. 1982).

5. *Id.*, 18 B.R. at 347.

6. *In re Taylor*, 16 B.R. 323, 8 B.C.D. 692 (Bankr. D.Md.1981).

principal motivation is neither punishment nor a sense of public duty, but rather to obtain payment of a dischargeable debt either by an order of restitution or by compromise of the criminal charge upon payment of the civil obligation, the Bankruptcy Court may properly enjoin the criminal proceeding.[7]

The test enunciated by the court in *Taylor* appears to be that which is followed by the majority of the courts.[8] We conclude, however, that the court should examine both the motive of the prosecuting creditor (as in *Taylor*) and the resulting effect which the criminal prosecution has on the administration of the estate and the furtherance of the purposes of the Bankruptcy Code (*as in Strassmann*).[9]

■  Applying those principles to the instant case, we conclude that P.M.A. should be enjoined from continuing its state criminal prosecution of the debtor and its president. Although the vice president of P.M.A. testified at the trial of the instant complaint that the purpose of the criminal prosecution was not to obtain payment of the debt but rather was to see that justice was done, we conclude that such self-serving testimony is hardly credible. In the instant case, the debtor offered an explanation for the fact that the P.M.A. check failed to clear the bank.[10] Nonetheless, P.M.A. instituted its criminal action five months after the debtor filed its petition under chapter 11. Furthermore, the vice president of P.M.A. admitted that, although

7.  16 B.R. at 325–26, 8 B.C.D. at 693.

8.  *See, e.g., In re Lake*, 11 B.R. 202 (Bkrtcy.S.D. Ohio 1981) (held that, where criminal prosecutions against debtors were instituted solely to collect a bad check debt rather than out of a sense of public duty, the court should permanently enjoin those proceedings); *In re James*, 10 B.R. 2, 2 C.B.C.2d 322 (Bkrtcy.W.D.N.C. 1980) (court enjoined a creditor from continuing a criminal proceeding against the debtor for worthless checks because the court found that the criminal action was instituted solely to collect a civil debt which had not been determined to be nondischargeable); *In re Reid*, 9 B.R. 830, 4 C.B.C.2d 196 (Bkrtcy.M.D.Ala.1981) (held that, where actions and statements of creditors revealed that their efforts in instituting criminal proceedings against debtor were directed toward collection of debts due them and thereby gaining preferential treatment over other creditors, the stay of those criminal proceedings was warranted); *In re Caldwell*, 5 B.R. 740, 6 B.C.D. 892, 2 C.B.C.2d 1178 (Bkrtcy.W. D.Va.1980) (bankruptcy court enjoined a creditor from proceeding with a criminal prosecution against the debtor because it found that the creditor was using the threat of those proceedings to extract a preferential payment to the prejudice and exclusion of the other creditors, thereby thwarting the purposes of the Bankruptcy Code). *Cf. In re Cornmesser*, 1 B.R. 482 (E.D.Tenn.1978) (district court held that, where state criminal proceedings were *not* instigated in bad faith, for the purpose of harassment or for collection of a dischargeable debt, it was not error for the bankruptcy court to refuse to enjoin those proceedings). *See also, In re Johnson*, 16 B.R. 211 (Bkrtcy.M.D. Fla.1981) in which the bankruptcy court refused to enjoin a criminal prosecution on an allegedly bad check solely on the assertion that the prosecution would cause irreparable harm to the debtor. Nonetheless, the court in *Johnson* stated that it "is well established, however, that the Bankruptcy Court will not permit the State to use criminal prosecution for the sole purpose of collecting a debt dischargeable in bankruptcy, or to use law enforcement as a collection agency." *Id.* at 212.

9.  *See, e.g., In re Bray*, 12 B.R. 359, 360 (Bkrtcy. M.D.Ala.1981) wherein the bankruptcy court held that where one of the purposes and the necessary effect of a criminal prosecution is to enforce the collection of a dischargeable debt, the court is justified in protecting its order of discharge by enjoining the parties from continuing that criminal action. Consequently, the court in *Bray* held that, since restitution was a mandatory sentence for conviction under the Alabama worthless checks statute, it would permanently enjoin the creditor from prosecuting the debtor under that statute. *See also, In re Barnett*, 15 B.R. 504 (Bkrtcy.D.Kan.1981) in which the bankruptcy court refused to enjoin a criminal prosecution on a worthless check but stated that any order of restitution arising out of that prosecution would be in direct conflict with the Bankruptcy Code and would thus be void under the Supremacy Clause. *Id.* at 512, *citing Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

10.  The president of the debtor testified that, pursuant to its arrangement with the bank, the bank advanced funds to the debtor each day to cover the checks written on its account. Therefore, he stated that the check to P.M.A. would have cleared the bank except for the fact that, after the debtor issued the check but before it was cashed, the debtor filed its petition under chapter 11.

he wants to see justice done, he was not waiving any rights he had under state law. Since an order of restitution is a common result of a conviction under the bad check statute,[11] we conclude that a purpose (if not the sole purpose) of P.M.A.'s institution of the criminal proceedings was to obtain some repayment of the debt owed to it by the debtor.

In addition, we find that the administration of the estate and the purposes of the Code would be frustrated if we were to permit P.M.A. to proceed with the criminal action. Allowing certain creditors to continue with such criminal actions and thereby to obtain repayment of their debts (either through court-ordered restitution or by the threat of such a prosecution and order) would permit those creditors (to whom a check was issued but which did not clear) to obtain a preferential payment to the detriment of other creditors in their class. Such prefential treatment is clearly contrary to the scheme and purposes of the Bankruptcy Code.

For the reasons stated above, we conclude that P.M.A. should be enjoined from continuing its criminal action against the debtor. We, likewise, conclude that P.M.A. should also be enjoined from continuing that criminal action against the president of the debtor corporation. We find that P.M.A.'s action against the president is also motivated by a desire to collect on the debt owed by the corporation in preference to the other creditors and that to allow P.M.A. to continue the action against the president would have a deleterious effect on the debtor's reorganization efforts.[12]

11. *See, e.g., In re Strassmann*, 18 B.R. 346, 347 (Bkrtcy.E.D.Pa.1982).

12. By our decision herein, we are not deciding whether the debt in question is dischargeable or nondischargeable. Should it be determined, in a proper proceeding, that the debt in question is nondischargeable then we would, on application, dissolve our injunctive order. Unless and until such a determination is made, however, we must presume that the debt is dischargeable. *See* 11 U.S.C. § 523(a) & (c). *See, also, In re James*, 10 B.R. 2, 2 C.B.C.2d 322 (Bkrtcy.W.D.N.C.1980).