**In the Matter of Charles VAN RIPER, Jr. and Alice A. Van Riper, d/b/a Van Riper Contracting Company a/k/a Van Riper Construction, Debtors.**

Bankruptcy No. LM7–80–01630.

United States Bankruptcy Court,
W.D. Wisconsin.

Dec. 23, 1982.

Gary L. Olstad, Olson, Trapp & Olstad, La Crosse, Wis., for creditors Vernon and Betty La Fleur.

Terrance McArdle, McArdle, Hoffman & McArdle, La Crosse, Wis., for debtors.

## MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

During 1980, the debtor Charles Van Riper worked as a prime contractor under contract to build a house for Mr. and Mrs. La Fleur. In pursuance of that contract Van Riper hired Interior Designs to work on the house as a subcontractor. Interior Designs was not paid in full for its work and contacted the La Fleurs to seek payment in lieu of filing a construction lien. It is alleged that First Federal Savings and Loan made disbursements to Van Riper in payment on the La Fleur contract but that funds received by Van Riper were not applied to pay subcontractors including Interior Designs. La Fleur tried to force payment to Interior Designs from Van Riper. His efforts included various communications by his attorney, Carl Hanson, with Van Riper's attorney Janet A. Jenkins of Bosshard, Sundet & Associates. In September 1980 Hanson and Jenkins discussed the Interior Designs' construction lien and Hanson was satisfied that Van Riper would pay Interior Designs. Negotiations about the means of payment continued throughout September and October 1980.

On November 11, 1980 Jenkins wrote to Hanson informing him that the Van Ripers had filed bankruptcy on November 6. Hanson received the letter within a day or two thereafter and advised his clients. Then Hanson contacted the district attorney for La Crosse County to urge prosecution of Van Riper under the contractor theft provisions of Wis.Stat. § 779.02. Hanson may also have discussed prosecution with the district attorney's office prior to November 11, 1980. After learning of the Van Ripers' bankruptcy, Mr. La Fleur also contacted the district attorney's office for the first of several times to urge prosecution of Van Riper. Efforts to encourage prosecution included a letter to the district attorney written by Hanson on November 24, 1980 noting the problems with payment to Interior Designs and suggesting other subcontractor payment problems. Neither Hanson nor the La Fleurs recall signing a complaint with the district attorney's office. Mr. La Fleur stated that his reasons for going to the district attorney were 1.) to force, if possible, the payment of the debt owed him by Van Riper and 2.) to seek punishment of Van Riper for what he believed to have been genuinely criminal conduct. Although he bore Van Riper no personal animus he did feel that Van Riper had engaged in stealing as it is commonly understood.

On or about January 16, 1981, Hanson, on behalf of the La Fleurs, filed with the bankruptcy court a document styled an objection to discharge. The bankruptcy court received the document but returned it with a letter dated January 22, 1980 indicating that an objection to discharge can only be commenced as an adversary proceeding by filing a summons and complaint accompanied by the appropriate filing fee. The La Fleurs never commenced an adversary proceeding to determine the dischargeability of the Van Ripers' debt to them or to Interior Designs, and that debt was discharged on February 3, 1981.

After discussions between Hanson and Jenkins in late January or early February an agreement was reached providing that the La Fleurs would withdraw their request that the district attorney prosecute and their objection to discharge in exchange for Van Riper making regular payments. The exact terms of the agreement remained

subject to discussion until April 27, 1981 when, after receiving a letter on April 23 from the district attorney and a letter from John Bosshard on April 24, 1981 advising the Van Ripers that criminal prosecution was a genuine and serious threat, the debtors signed a note for $5,634, principal, with payments of $100 per month in favor of the La Fleurs. At that time the Van Ripers also signed a mortgage on their residence securing the note.

The La Fleurs refused the first payment tendered on the note claiming it to be untimely and commenced an action in circuit court to foreclose the mortgage. The Van Ripers did not retain counsel on the foreclosure action and did not appear. A judgment of foreclosure was taken and garnishment of both Mr. and Mrs. Van Ripers' wages followed entry of the judgment. Efforts at garnishment continued until Van Riper agreed to make periodic $80 payments.

No application has been made by the Van Ripers to reaffirm their indebtedness to Interior Designs or the La Fleurs and no approval of a reaffirmation agreement has been given by this court. The debtors now seek to have the actions of the La Fleurs in attempting to collect the debt to Interior Designs found to be a contempt of the stay imposed under 11 U.S.C. § 362(a) and the injunction imposed under 11 U.S.C. § 524(c).

The La Fleurs contend their effort to have the Van Ripers prosecuted under Wisconsin's contractor theft statute, Wis.Stat. § 779.02 (1979–80), is not a violation of the 11 U.S.C. § 362 automatic stay because § 362(b)(1) provides that the filing of a petition does not stay "the commencement or continuation of a criminal action or proceeding against the debtor."

The criminal proceedings exception to the automatic stay applies only to the commencement or continuation of an action or proceeding. No proceeding was pending when Van Ripers filed this bankruptcy case. Nor was a criminal proceeding commenced thereafter. Wisconsin's criminal procedure code provides:

A prosecution may be commenced by the filing of:

(a) A complaint;

(b) In the case of a corporation, an information;

(c) An indictment.

Wis.Stat. § 967.05(1) (1979–80). The statutes provide no other means by which a criminal proceeding is commenced. The U.S. Supreme Court has stated that one is not charged with a crime until a complaint has been filed:

A criminal charge, strictly speaking, exists only when a formal written complaint has been made against the accused and a prosecution initiated.... In the eyes of the law a person is charged with crime only when he is called upon in a legal proceeding to answer to such a charge. Mere investigation by prosecuting officers, or even the inquiry and consideration by examining magistrates of the propriety of initiating a prosecution, do not of themselves create a criminal charge.

*United States v. Patterson,* 150 U.S. 65, 68, 14 S.Ct. 20, 21, 37 L.Ed. 999, 1000 (1893).

Neither the La Fleurs nor the La Crosse County district attorney ever filed a criminal complaint against the Van Ripers. Nor was an indictment ever handed down. Only the threat of a criminal prosecution actually existed. That threat was exploited by the La Fleurs and their attorney to effect collection of the debt from Van Riper. Therefore, the contacts with the Van Ripers after filing are not within the exception to the automatic stay for the commencement of a criminal proceeding. Reliance upon the criminal prosecution exception is misplaced.

Although the foregoing analysis disposes of the central defense claimed by the La Fleurs, some further consideration of the tension between the prohibition Congress has placed upon collection efforts directed against debtors in bankruptcy under 11

U.S.C. § 362(a)[1] and the preservation of criminal proceedings against the debtor under the exception stated in 11 U.S.C. § 362(b)(1)[2] is merited. The integrity of both the congressionally prescribed bankruptcy system and the state and federal criminal law are at stake in those increasingly frequent cases where the prosecution of crimes is made dependent upon and is directly beneficial to the victim who seeks and encourages enforcement. Typically the enforcement of such victim recovery criminal laws takes place only when all other collection remedies fail. The recipient of a bad check may even be required to exhaust other remedies before seeking prosecution.[3] To do otherwise would overburden the criminal justice system. Many of these crimes are given very low priority for prosecution because they duplicate in large part civil collection remedies.[4] Even when criminal actions have been commenced, courts have looked beyond the fact that an action is initiated against a debtor under a criminal statute and have examined the creditor's intent in pursuing prosecution.

Cases dealing with attempts to collect debts by prosecution under state bad check statutes illustrate a common approach to this issue. In *In Re Penny,* 414 F.Supp. 1113 (W.D.N.C.1976) the debtor wrote a bad check for $11,000. Over a year after the check was dishonored the debtor filed a voluntary petition in bankruptcy. Eight months later the payee swore out a criminal warrant against the defendant, who was subsequently convicted on a bad check charge. The court enjoined continuation of the criminal prosecution, stating that:

> regardless of motive, the *effect* of the proceeding is to put the bankrupt in the position of conflicting duties. On the one hand, the bankruptcy court will order him to pay only a fraction of the debt, if it is dischargeable. On the other hand, the State court has ordered him to pay it all, or go to jail....
>
> ... If the criminal action is allowed to proceed, the jurisdiction and judgments of the bankruptcy court will be wholly frustrated.

*Id.* at 1115.

*See also, In Re Caldwell,* 5 B.R. 740, 6 B.C.D. 892 (Bkrtcy.W.D.Va.1980), *In Re Lake,* 11 B.R. 202 (Bkrtcy.S.D.Ohio 1981), *In Re Johnson,* 16 B.R. 211 (Bkrtcy.M.D.Fla. 1981), *In Re James,* 10 B.R. 2, 2 C.B.C.2d 322 (Bkrtcy.W.D.N.C.1980), *In Re Taylor,* 16 B.R. 323, 8 B.C.D. 692 (Bkrtcy.D.Md.1981), *In Re Frank,* 19 B.R. 41, 8 B.C.D. 1343 (Bkrtcy.E.D.Pa.1982).

However, the Eleventh Circuit has refused to enjoin the continuation of a state

---

1. 11 U.S.C. § 362(a) provides:

    Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

    (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

    (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

    (3) any act to obtain possession of property of the estate or of property from the estate;

    (4) any act to create, perfect, or enforce any lien against property of the estate;

    (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

    (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

    (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

    (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

2. 11 U.S.C. § 362(b)(1) provides:

    (b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

    (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor.

3. *See* Wis.Stat. § 943.24(3).

4. *See generally,* National District Attorneys Association, *National Prosecution Standards,* 125–27, 131–32 (1977).

court criminal prosecution for writing bad checks. In *Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982), the debtor wrote a total of $37,000 of bad checks and then filed a petition in bankruptcy. A few months later, a grand jury indicted him under the Alabama statute for theft by deception. The statute requires restitution following conviction. The bankruptcy court enjoined continuation of criminal proceedings because allowing the action to continue would permit the creditor to collect a dischargeable debt. The circuit court rejected the bankruptcy court's statement that the injunction was necessary to protect the anticipated order of discharge, declaring:

> [t]he basic error of the bankruptcy judge was to misjudge the width of his turf. The purpose of bankruptcy is to protect those in financial, not moral, difficulty. The bankruptcy courts were not created as a haven for criminals. [Citation omitted.] There is a public interest in every good faith criminal proceeding, especially on the presentment of a grand jury, which overrides any interest the bankruptcy court may have in protecting the financial interest of debtors.

Id. at 1251.

In examining whether the state court could order restitution in an action based on a dischargeable debt, the Eleventh Circuit court adopted *United States v. Carson,* 669 F.2d 216 (5th Cir.1982) which held that a federal court may, as a condition of probation, require a criminal offender to make restitution as required by statute to the victim for losses caused by the offense for which he was convicted, even though the debt creating the offense had been discharged. The failure of the creditor to protect its rights in the bankruptcy proceeding and the consequent discharge did not bar the criminal court from requiring restitution. The *Barnette* court also refused to follow the line of bad check cases enjoining criminal prosecutions stating:

> [s]ome district courts have interfered with state criminal proceedings only where subversion of the criminal process to collect debt was found. [Citing *Penny, Reid* [*v. Young,* 9 B.R. 830 (Bkrtcy.M.D. Ala.1981) ], *Lake* and *Caldwell.*] If Barnette believed the prosecution for theft was a subterfuge for collection of a debt, he could have raised the issue as a defense in the state criminal proceeding. [Citation omitted.] ... In any event, there was no finding of abuse of the criminal process made in the instant case. The bankruptcy judge's concern was that '[t]he necessary effect of conviction then, is to collect a debt dischargeable in bankruptcy.'

673 F.2d at 1252.

Upon the finding that the effect of a conviction was not an appropriate basis for restraining the prosecution, the *Barnette* court dissolved the injunction against prosecution.

The question in the present case is not whether a criminal prosecution should be enjoined, but rather, whether after receiving notice of the debtor's bankruptcy a creditor may take steps to collect a debt by use of the criminal process without first seeking relief from the stay under 11 U.S.C. § 362.[5] Whether a criminal prosecution can be commenced or continued is not directly at issue in this case. Mr. La Fleur has stated that his approach to the district attorney was predicated on a desire to collect a debt from Van Riper. Efforts to collect are specifically proscribed by 11 U.S.C. § 362(a) for as long as the automatic

---

**5.** The risk in restating questions has been suggested in the following quotation from Gerhard Casper, *Law and Advocacy* 15 John Marshall L.Rev., 557 at p. 558 and is duly recognized by this court:

> I am reminded of a debate between a Jesuit and a Benedictine monk as to whether one is permitted to smoke while praying. The Jesuit thought it was permissible to smoke while praying. The Benedictine took the opposite position. They referred the matter to their respective superiors. When they got together again, each had been confirmed in his views. The Jesuit simply could not understand the stubbornness of the order of St. Benedict. 'What question did you ask,' he interrogated his brother. 'Are you permitted to smoke while praying?' 'No wonder,' the Jesuit responded. 'I asked whether you may pray while smoking.'

stay is in force. It is apparent that Congress intended to restrain all efforts to collect debts which arose prior to the bankruptcy filing.[6] If Mr. La Fleur's additional motivation for seeking prosecution, to punish criminal conduct, is to be given credence, and *Barnette v. Evans, supra,* suggests that it clearly should, a dilemma is created. Efforts to collect are stayed, but the means of collecting, i.e. commencement or continuation of criminal process, is not stayed. Should the creditor be required to seek relief from the stay against collection to employ the permissable means? The only reason for answering "no" would seem to be a concern that the additional requirement would retard or discourage the consistent enforcement which makes criminal laws effective in controlling behavior. To what extent that would result from a requirement that relief from stay be sought in the present case is not subject to easy proof. Nor is it easy to balance that risk against the risk of creditor harassment by threat of seeking prosecutions under victim recovery crime statutes. Initially it does not seem an unreasonable requirement that a creditor follow the simple procedures for seeking relief from the automatic stay before contacting the prosecutor. If the good faith pursuit of the criminal prosecution is demonstrated, it should be clear in light of *Barnette* and the sentiment expressed therein that a cause for lifting the stay under 11 U.S.C. § 362(d)(1)[7] would have been demonstrated. Such a preliminary step would assure the appropriate limitation on the scope of and the motivation for a creditor's action. The procedures for relief from stay are both simple and expedited.[8] They cannot reasonably be claimed be so burdensome as to have a chilling effect on future seeking of good faith prosecutions.

*Barnette* suggests that every "good faith criminal proceeding" should be protected. 673 F.2d at 1251. This court agrees wholeheartedly. When the prosecution is not initiated by conduct otherwise affected by the automatic stay, no prescreening of the prosecution would be necessary or desirable. However, when the anticipated criminal proceeding is sought in conjunction with conduct proscribed under 11 U.S.C. § 362(a) there would appear to be no better place to determine the *bona fides* on which the creditor is proceeding than as provided in the procedures set up for seeking relief from the stay. The question in this case, then, is not whether relief would have been granted

**6.** The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

Subsection (a) defines the scope of the automatic stay, by listing the acts that are stayed by the commencement of the case. The commencement or continuation, including the issuance of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case is stayed under paragraph (1). The scope of this paragraph is broad. All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. Proceeding in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 49 (1978), U.S. Code Cong. & Admin.News, pp. 5787, 6296–97.

**7.** *See In Re Terry,* 12 B.R. 578 (Bkrtcy.E.D.Wis. 1981); *In Re Quinlan,* 12 B.R. 516 (Bkrtcy.W.D. Wis.1981).

**8.** Under present practice of this court and the final draft of the proposed rules (Proposed Rule 4001) a creditor may seek relief from stay by motion, on which no hearing need be held unless specifically requested, 11 U.S.C. § 102(1) and on which a hearing if requested must be held within 30 days, 11 U.S.C. § 362(e).

if sought,[9] but rather whether La Fleur and his attorney erred in not seeking relief prior to contacting the district attorney as a means of collecting. Because they proceeded in violation of the stay against efforts to collect from the debtor, they erred.

The court in *Barnette v. Evans* noted that the bankruptcy court had reasoned that if the prosecution were successful and mandatory restitution thereby required it would conflict with the debtor's discharge of the debt, if discharge were granted. The court characterized that reasoning as similar to saying, if we had ham we could have ham and eggs if we had eggs. In the present case discharge was granted and restitution was at least partially accomplished by the mere threat of commencement of the criminal proceeding. We have ham and eggs, the question is whether the ham was properly obtained or, figuratively, stolen by violation of the automatic stay. It is the integrity of the congressionally formulated stay which has been sought to be protected, not some philosophical notion of the bankruptcy court protecting debtors.

Having considered the bases upon which the La Fleurs might contend that they have not violated the stay imposed by 11 U.S.C. § 362 and finding none of them compelling, the court must find that the stay has been violated. Violation of the stay is a contempt.[10] Any act taken in contempt of the court or subsequently in reliance on that contempt is void.[11] Both the mortgage note and the judgment taken in foreclosure of it are void and without legal effect.

■ The final question before the court is whether the La Fleurs' conduct was a mere technical contempt or of a nature deserving a more severe sanction. If a creditor's conduct violates the 11 U.S.C. § 362(a) automatic stay, lack of notice of the debtor's bankruptcy is not a defense. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51–52 (2d Cir.

1976) *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *In Re Eisenberg,* 7 B.R. 683, 3 C.B.C.2d 440, 448 (Bkrtcy.E.D.N.Y.1980). However, in determining whether to impose sanctions, courts must determine whether the creditor acted innocently or with a knowing or reckless disregard for the authority of the court as embodied in the stay. Where the party held in contempt did not have notice that the debtor filed a petition in bankruptcy prior to a foreclosure sale, this court has held the foreclosure to be technical contempt and has refused to impose sanctions. *In Re Cherek,* Adv.Pro. 81–0193 (Bankr.W. D.Wis. Nov. 30, 1981).

There is no doubt that there was effective notice of the filing of the present case. Notice of the stay under 11 U.S.C. § 362 is reasonably charged upon the parties as well. The fact that creditors had notice does not alone determine whether their actions involved the disregard for the court's authority upon which an imposition of a contempt sanction should be based. Where an attorney who had been warned of the stay proceeded to bring a malpractice action against the debtor, the attorney was only required to pay the debtor's costs because there was no intent to harass the debtor or circumvent the bankruptcy court. *In Re Terry,* 12 B.R. 578, 7 B.C.D. 1218 (Bkrtcy.E. D.Wis.1981). Similarly, in *In Re Rhoten Const. Co.,* 22 B.R. 335 (Bkrtcy.M.D.Tenn. 1982), filing a motion in state court to have the debtor found in contempt for failure to answer interrogatories in connection with a state court suit, was held to be a violation of the stay. The violation was a technical contempt, for which costs would be awarded. Since the court believed that the moving party acted in good faith, no fine was imposed.

■ The evidence received at trial in this case indicates that La Fleur and his attor-

---

9. Absent a showing of bad faith, the "cause" for relief from stay required by 11 U.S.C. § 362(d)(1) may well have been shown in this case.

10. *In Re Bailey,* 20 B.R. 906 (Bkrtcy.W.D.Wis. 1982), *In Re Wilkerson,* 22 B.R. 728 (Bkrtcy.E. D.Wis.1982).

11. *In Re Terry,* 12 B.R. 578, 7 B.C.D. 1218 (Bkrtcy.E.D.Wis.1981) and cases cited therein.

ney sought and obtained a proposal for payment of a discharged debt by threat of commencing criminal prosecution. These activities and those previously discussed in connection with the initial contempt suggest an animus toward the Van Ripers and a disregard for the bankruptcy law which exceeded the reasonable discretion notice of the stay should have triggered. Neither the La Fleurs nor their attorney, Carl Hanson were innocent of the contempt in this case.

The measure of a sanction for contempt is the amount of expense incurred by the injured party. There is no evidence in the record to support the actual expenses of the Van Ripers on any of the following categories which would appear to form the reasonable elements of expense in this matter:

(a) Payments made to La Fleurs after filing, either directly or by garnishment.

(b) Attorney fees and disbursements paid by Van Riper in connection with garnishment or execution and foreclosure of the mortgage by La Fleur.

(c) Reasonable costs of clearing title of the mortgage to La Fleur.

(d) Costs and attorney fees of this contempt proceeding.

Van Ripers are permitted to submit by filing with the court and serving on opposing counsel affidavits as to the amounts of these expenses within 15 days of the date of this decision. If no request for a hearing on the accuracy of those affidavits is received within 15 days after they have been served, a judgment based thereon may be filed in accordance with this memorandum decision, providing specifically that the contempt found herein may be purged by the payment of all proven expenses as identified above within 30 days of the date of the judgment.