**In the Matter of Larry and Debra SCHAKE, Debtors.**

**Debra SCHAKE, Plaintiff,**

v.

**COUNTY OF BUFFALO, NEBRASKA, Defendant.**

**Bankruptcy No. BK90–40397.
Adv. No. A90–4069.**

United States Bankruptcy Court, D. Nebraska.

Jan. 21, 1993.

Vincent M. Powers, Lincoln, NE, for plaintiff.

Andrew Hoffmeister, Kearney, NE, for defendant.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

The Debtor, Debra Schake, seeks a determination that the Buffalo County Attor-

ney's Office violated the automatic stay by proceeding on requests to prosecute dishonored checks. Amicus curiae briefs were filed by the Nebraska County Attorney's Association, Legal Services of Southeast Nebraska and Legal Aid in Omaha. The case was submitted on a stipulation of facts. I conclude that the automatic stay was not violated because § 362(b)(1) permits the commencement or continuation of a criminal action or proceeding against bankruptcy debtors.

## STATEMENT OF FACTS

The Debtor, Debra Schake, wrote a check payable to Mr. John Wubbenhorst in payment of an account. The check was dishonored and returned to Mr. Wubbenhorst for insufficient funds. At the time she wrote the bad check, Debra Schake believed she had sufficient funds in her bank account to cover the check. When Mr. Wubbenhorst's attempts to collect the amount of the check from Debra Schake were unsuccessful, he sent the dishonored check to the Buffalo County Attorney's Office accompanied by a "Request for Criminal Prosecution on Bogus Check." After receiving a letter from the Buffalo County Attorney's Office, Debra Schake agreed, in writing, to make payments on the amount of her bad check. The stipulation of facts states that Debra Schake would not be criminally prosecuted if she made payments in accordance with her written agreement.

The co-debtor, Larry Schake, wrote four insufficient funds checks. Each was referred to the Buffalo County Attorney's Office with a "Request for Criminal Prosecution on Bogus Check". Upon receipt of the request, the Buffalo County Attorney's Office sent the following form letter to Larry Schake:

Dear Mr. Schake:

Your check(s) in the amount(s) of $36.56, 26.42, 50.98 & 14.52 dated 2–22, 2–14, 2–14 & 2–12–91 and given to Glenwood Corners has been refused by the bank returned unpaid and turned over to this office for prosecution. In addition to paying the amount of your bad check, there is a prosecution fee of $10.00 on each check which you shall also pay.

You are hereby given ten (10) days from the date of this notice to make this check(s) good. If payment is made to the business/person the check was issued to by May 13, 1991, no charges will be filed. However, if you fail to make payment to the business/person within 10 days, a complaint may be filed with the Buffalo County Court and a warrant issued for your arrest.

*PLEASE REMEMBER TO PAY THE $10.00 FEE TO THE BUSINESS/PERSON. IT IS INCLUDED IN THE AMOUNT BELOW.*

*PLEASE PAY THE FULL AMOUNT OF $168.48 BY MONEY ORDER OR CASHIER'S CHECK TO: Walmart, P.O. Box 3033, Kearney, Nebraska 68847*

Please govern yourself accordingly.

Very truly yours,

THOMAS S. STEWART

Deputy Buffalo County Attorney

In this case, the Buffalo County Attorney's Office followed its standard operating procedures for handling Request for Criminal Prosecution on Bogus Checks. Upon receipt of such a request, the County Attorney writes a form letter, reproduced above, which demands payment within ten days. If the checks are not paid within ten days, the County Attorney files criminal charges. If the dishonored checks are not paid by the criminal arraignment date, the County Attorney expects the drawer of the check to plead guilty or not guilty at the arraignment. If the check is fully paid by the arraignment date, the criminal charges are usually dismissed with the defendant held liable for costs.

The Buffalo County Attorney's Office receives a high number of bad check complaints each year. Between July 1, 1989, and June, 1990, approximately 1,157 checks had $10.00 prosecution fees paid to the Buffalo County Treasurer. Between July 1, 1990, and June 30, 1991, approximately 1,357 checks had $10.00 prosecution fees paid to the Buffalo County Treasurer. The payment of a $10.00 prosecution fee indi-

cates that the maker of an insufficient funds check paid the amount due on the check and the $10.00 fee, and was not prosecuted. For the period of time from July 1, 1989, to the present, there have been no complaints made to the Buffalo County Attorney's Office regarding the handling of bad checks.

## DISCUSSION

The prosecution of bankruptcy debtors on bad checks during the pendency of a consumer bankruptcy case undermines the Bankruptcy Code in several ways. First, the debtor is coerced into paying a debt which has not been formally excepted from discharge by court order under §§ 523 or 1328. Second, the holder of the bad check is paid in full in contravention of the rule that unsecured creditors are to be paid pro rata absent a federally recognized priority or valid basis for discrimination. *See* § 507; § 726; § 1322 and *In re Leser,* 939 F.2d 669 (8th Cir.1991) (Chapter 13 plan could discriminate in favor of unsecured child support claim). Third, bad check prosecutions in Chapter 13 cases force debtors to use post-petition income, which is property of the estate under § 1306, to pay off the debt. Not only does this interfere with property of the estate, but it coerces debtors into making illegal payments on prepetition unsecured claims. Prepetition unsecured claims must be provided for and paid pursuant to the confirmed plan. *See Matter of Harris,* 107 B.R. 210 (Bkrtcy.D.Neb.1989). Fourth, devotion of post-petition income to payment of bad checks depletes income and may impair a debtor's ability to make payments required by the plan. Finally, permitting criminal prosecutions to force Chapter 13 bankruptcy debtors to make payments on bad checks is inconsistent with § 523(a)(7), as construed in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), and with § 1328(a)(3). Although criminal restitution obligations are not dischargeable, neither § 523(a)(7) nor § 1328(a)(3) create a priority claim for the holders of bad checks. The restitution claim and a nondischargeable debt simply survive bankruptcy. This statutory scheme is undercut if criminal prosecution is permitted because financial rehabilitation in Chapter 13 becomes impossible either due to incarceration or unavailability of funds, and the holders of bad checks are preferred.

However, there is a paramount countervailing policy consideration: bankruptcy should not provide a sanctuary from criminal prosecution. By enacting § 362(b)(1), Congress determined to permit criminal prosecution notwithstanding its negative impact upon a debtor's rehabilitation in bankruptcy.

Bankruptcy debtors generally attempt to bar criminal prosecutions on bad checks in two ways. First, they assert that injunctions that exist under §§ 362 and 524 of the Bankruptcy Code are violated by the prosecution of bad checks. If the debtor does not prevail on the basis of these injunctions, debtors request the bankruptcy court to issue an injunction under authority of § 105.

█ Federal courts have had great hesitancy to enjoin state criminal prosecutions. The Supreme Court's decision in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), strongly militates against enjoining state criminal proceedings. However, in appropriate circumstances, a bankruptcy court may enjoin criminal proceedings before a state court by enjoining the litigants. *See Matter of Davis,* 691 F.2d 176 (3rd Cir.1982). The Debtor does not seek injunctive relief in this case, and there is no indication in the facts that the County Attorney is acting in bad faith or for the purpose of harassment.

Plaintiff alleges that the County Attorney violated the automatic stay of § 362 by taking actions in response to the "Request for Criminal Prosecution on Bogus Check." The § 524 injunction is not applicable to the facts of this case since no discharge order has been entered. There are no allegations in this case that the creditors violated the stay by making the requests for prosecution. Compare *Matter of Van Riper,* 25 B.R. 972 (Bkrtcy.W.D.Wis.1982) *with In re Anoai,* 61 B.R. 918 (Brktcy.D.Conn.1986).

■ In Section 362(b)(1), Congress made clear that the automatic stay does not bar "the commencement or continuation of a criminal action or proceeding against a debtor." Under § 362(b)(1), the automatic stay is not violated when a county attorney continues to prosecute a criminal action that is pending on the date that the bankruptcy case was filed. Furthermore, the automatic stay does not prevent a county attorney from filing criminal charges after the bankruptcy case is commenced.

On the facts of this case, no criminal action is pending. The Debtor, Debra Schake, argues that the stay was violated by the County Attorney sending letters to Debra and Larry Schake and by the County Attorney entering into the agreement with Debra Schake requiring payment of her check.

There is some precedent for reading § 362(b)(1) as a very narrow exception which permits only the commencement or continuation of formal criminal litigation. *See Matter of Van Riper*, 25 B.R. 972 (Bkrtcy.W.D.Wis.1982) (holding that creditor must obtain relief from stay before filing a criminal complaint). I disagree with such a narrow construction of § 362(b)(1).

Historically, there has been great hesitancy for federal courts to interfere with a state's prosecution of its criminal laws. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The states have a paramount interest in protecting their citizens through the exercise of police powers. Nebraska certainly has a strong interest in protecting its citizens against the issuance of bad checks. *See Matter of Davis*, 691 F.2d 176 (3rd Cir. 1982). The national interest is best served by permitting states to exercise police powers in the manner they choose, subject only to the Constitution and to the limitations imposed by other federal law. The Bankruptcy Code recognizes the importance of permitting states to enforce criminal laws notwithstanding the pendency of a bankruptcy case.

■ I conclude that § 362(b)(1) should not be construed as providing a limited exception from the automatic stay for the commencement or continuation of only formal criminal litigation. The right to commence a criminal action is meaningless unless it extends to performance of the conditions precedent thereto. Citizens of the states must be free to make criminal complaints without fear that their action may subject them to penalty, and even punitive damages under § 362(h), for violating the automatic stay. A county attorney must be free to investigate allegations, exercise prosecutorial discretion and determine whether to file criminal charges without concern that the automatic stay may be violated. I conclude that actions of a county attorney which are reasonably related to processing a criminal complaint should not be construed to violate the stay.

■ The County Attorney's actions in this case bore a reasonable relationship to the processing of formal written requests for criminal prosecution. The procedures followed by the County Attorney were referable to Neb.Rev.Stat. § 28–611 (Cum. Supp.1992). Under § 28–611(5), a person is presumed to have known of insufficient funds to cover a check if the person does not pay the check within 10 days of notice of dishonor. By sending letters to the Debtors, the County Attorney was assured that the drawer had notice of dishonor, and, if the check was not paid within 10 days, the prosecutor would benefit from the rebuttable statutory presumption of intent under § 28–611(5). The stay was not violated by transmittal of the letter.

■ The agreement between the Debtor, Debra Schake, and the County Attorney is more problematic under § 362 because the agreement has more of the characteristics of debt collection. Under the agreement, the Debtor would not be criminally prosecuted if she paid the bad checks. If such an agreement for payment of prepetition unsecured debt were entered into between a debtor and a creditor after the commencement of the bankruptcy case, the automatic stay of § 362 would be violated as the agreement involves an attempt to

collect the debt under threat of criminal prosecution by a creditor. When, as in this case, the agreement is between a county attorney and a debtor, the stay is not violated because the county attorney is acting upon a criminal complaint in the public interest, and the agreement is entered into as an incident of the criminal proceedings. The fact that the agreement results in payment of the civil debt is not controlling. The state has a legitimate interest in assuring that the checks be paid. The automatic stay should not be construed to prevent the county attorney from obtaining a non-judicial disposition of the criminal complaint.

In its amicus curiae brief, the Legal Aid Society of Omaha argues that permitting the County to prosecute bad checks frustrates the Bankruptcy Code policies that unsecured creditors should be treated equally and that debtor's be provided a fresh start. As I noted, the prosecution of bad checks does undercut important policies reflected in the Bankruptcy Code. However, these policies are at odds with the competing policy that bankruptcy should not provide a sanctuary from criminal prosecution. The importance of these policies was carefully weighed by Congress, and I conclude that Congress elected to permit criminal prosecutions to proceed under § 362(b)(1).

Legal Services of Southeast Nebraska argues that under the stipulation of facts submitted by the parties, the Debtor, Debra Schake, did not commit any crime under Nebraska's bad check statute. Legal Services notes that Debra Schake did not know there were insufficient funds in the account to cover the check at the time she wrote the check to Mr. Wubbenhorst. However, there is no information in the record that establishes that the County Attorney had knowledge, at any relevant time, of Debra Schake's state of mind or of her knowledge. The fact that a drawer of a check may or may not have knowledge of an insufficiency of funds does not make it unreasonable or unwarranted for the County Attorney to follow standard procedures in processing the criminal complaint. And, the automatic stay would not be violated as long as the actions of the County Attorney were reasonably related to the criminal complaint.

The state has a legitimate interest in being assured that checks are paid. The state may elect to use criminal sanctions to further that policy. The motivations of the creditor who files the request for criminal prosecution are irrelevant to the issue whether a county attorney violates the stay by proceeding on the criminal complaint. As stated in the context of a request for injunctive relief:

> We cannot require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution. Under these circumstances, the intentions of the complaining witnesses are not controlling in judging the good faith of a criminal prosecution.

*Matter of Davis*, 691 F.2d at 179.

Legal Services also asserts that this court should issue an injunction if it concludes that the stay was not violated. The issuance of an injunction is not before the court, and the stipulated facts do not warrant an injunction.

We are a government of laws, and the fact that a county attorney and creditor are not restrained from criminal prosecution of bankruptcy debtors by the automatic stay does not mean that the state's police power is unrestrained by law. County attorneys, as lawyers licensed to practice law, are governed by ethical standards which prohibit them from threatening to bring criminal charges for the sole purpose of gaining an advantage for third parties in civil matters. *See* DR7–105 and DR7–103(A), and *Nebraska State Bar Ass'n v. Gobel*, 201 Neb. 586, 271 N.W.2d 41 (1978). Furthermore, if criminal actions are brought in bad faith or for purposes of harassment, injunctive relief can be provided. *See Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Matter of Davis*, 691 F.2d 176 (3rd Cir.1982); *Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982); *Munson v.*

*Gilliam,* 543 F.2d 48 (8th Cir.1976). This case, however, does not involve a request for injunctive relief, nor does this case involve any allegation of bad faith criminal prosecution or the use of the criminal process for harassment purposes. If faced with such allegations, the bankruptcy court and other federal courts, and indeed, Nebraska courts, would not hesitate to closely scrutinize the allegations concerning activities of a county attorney.

The case before the court involves the narrow issue whether the automatic stay of § 362 is violated by a county attorney acting upon a criminal complaint on a bad check. I conclude that the exception of § 362(b)(1) is applicable to permit the county attorney to proceed on the processing of a criminal complaint, to correspond with the drawer of the bad check and to enter an agreement requiring repayment.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the County of Buffalo, acting by and through the Buffalo County Attorney, did not violate 11 U.S.C. § 362 under the facts as stipulated (Fil. # 18).