In re Crippen James TAYLOR and Doris Elaine Taylor, Debtors.

Crippen James TAYLOR, Plaintiff,

v.

Logan C. WIDDOWSON, et al., Defendants.

Bankruptcy No. 81-2-0979-L.
Adv. No. 81-0465.

United States Bankruptcy Court,
D. Maryland.

Dec. 31, 1981.

**324**

Arthur D. Webster, Webster, Walsh & Spery, Salisbury, Md., for plaintiff-debtor.

Thomas P. Barbera, Asst. Atty. Gen., Baltimore, Md., for defendant Logan C. Widdowson.

## MEMORANDUM OPINION AND ORDER

HARVEY M. LEBOWITZ, Bankruptcy Judge.

This adversary proceeding arises from a Complaint seeking injunctive relief filed by Crippen James Taylor on April 24, 1981. Eighteen individuals are named as parties Defendant in the Complaint. With the exception of the Defendant Logan C. Widdowson, all the Defendants are former employees of Taylor's ill-fated business venture, The Crisfield Garment Company (a sole proprietorship). Widdowson is the State's Attorney for Somerset County, Maryland, prosecuting Taylor on the basis of criminal warrants obtained by the other named Defendants under Maryland District Rule 720. Thus, the Court is called upon to determine whether a Bankruptcy Court may enjoin the prosecution of criminal charges pending in a State Court against a Debtor who has sought relief under The Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2549 (1978) (now codified at 11 U.S.C. §§ 101–151326 (Supp. IV 1980)) (the "Code"). Although this question has been decided elsewhere, it is one of first impression in this District.

Upon Taylor's motion, this Court entered a temporary restraining order, and set his motion seeking a preliminary injunction down for a hearing on May 6, 1981. At the hearing, Widdowson appeared and was represented by an Assistant Attorney General for the State of Maryland. Upon agreement of the parties, the hearing on the merits of the complaint was advanced and consolidated with the hearing on the motion seeking a preliminary injunction. Following the hearing, at which Widdowson and Taylor were the only witnesses called to testify, the Court entered a preliminary injunction pending the submission of proposed findings of fact and conclusions of law, and held the decision on the merits *sub curia*. The requested memoranda have been duly filed. There is no dispute among the parties with respect to facts material to the instant controversy.

### I

February 27, 1981, a Friday, was the final day of operation for Taylor's business. In accordance with his usual practice, the employees received checks on that date representing wages due for work performed during the prior week ending February 20, 1981. Approximately one-half of these checks, including those drawn payable to some of the Defendant employees named in this action, were dishonored by the drawee bank because insufficient funds were available to pay them. None of the employees were paid wages due for the week ending February 27, 1981.

The employees named as Defendants in this adversary proceeding thereafter swore out Statements of Charges that instituted criminal proceedings against the Debtor. Taylor is charged with violation of sections 141 and 342 of Article 27 of the Maryland Annotated Code—the first a "bad check" charge, and the second an allegation of

theft of services. On April 6, 1981, Taylor and his wife filed a Chapter 7 petition in this Court, and he sought injunctive relief here prior to his arraignment then scheduled for April 28, 1981.

At the hearing Taylor stipulated that the Defendant Widdowson was not prosecuting the criminal proceedings in question either for the purpose of harassment or in bad faith without hope of obtaining a valid conviction. Widdowson testified, without contradiction by Taylor, that the policy of the Somerset County State's Attorney's Office is to prosecute violations of the "bad check" statute without regard to whether restitution is made prior to trial. Taylor testified that during plea bargaining, however, an Assistant State's Attorney indicated that the charges would be dropped if the complaining witnesses (the other Defendants here) were paid.

Since the hearing, Taylor received a discharge under § 727 of the Code on November 16, 1981. As of that date none of the Defendants named in this proceeding had filed complaints under § 523 of the Code seeking a determination of nondischargeability with respect to the wage claims. Indeed, complaints founded upon §§ 523(a)(2), (4), and (6) may well be now foreclosed by force of § 523(c). *In re Leonard*, 12 B.R. 91, 92 n.2 (Bkrtcy.D.Md.1981).

## II

Criminal proceedings against a debtor are excepted from the scope of the automatic stay imposed by the Bankruptcy Code upon the filing of a petition in the Bankruptcy Court. 11 U.S.C. § 362(b)(1) (Supp. IV 1980). This exception, however, is not a limitation upon the Bankruptcy Court's power to enjoin criminal proceedings under the Bankruptcy Code's equivalent of the All Writs Act, 11 U.S.C. § 105 (Supp. IV 1980). Rather, an exception to the automatic stay merely reflects Congressional judgment that a party should move the court into action to determine on a case by case basis whether a particular action interferes with the financial rehabilitation of the Debtor or the orderly liquidation of his estate. H.R.

Rep.No. 95–595, 95th Cong., 1st Sess. 342 (1977); S.Rep.No. 95–989, 95th Cong., 2nd Sess. 51 (1978) U.S.Code Cong. & Admin. News 1978, p. 5787. *See also* 2 Collier on Bankruptcy ¶ 362.05 (15th ed. 1981).

There is some authority in this Circuit for the view that the Court should inquire into the facts and circumstances behind a criminal prosecution in order to determine whether a given criminal proceeding falls within the exception to the automatic stay in the first instance. *In re Caldwell*, 5 B.R. 740, 742 (Bkrtcy.W.D.Va. 1980). The better reasoned and majority line of authority, however, holds that in appropriate circumstances criminal proceedings may be enjoined on the basis of the Bankruptcy Court's power under § 105 to issue any order necessary to carry out the provisions of the Bankruptcy Code. *In re C. H. Stuart, Inc.*, 12 B.R. 85, 87 (Bkrtcy.W. D.N.Y.1981); *In re Lake*, 11 B.R. 202, 204–05 (Bkrtcy.S.D.Ohio 1981); *In re Reid*, 9 B.R. 830, 832 (Bkrtcy.M.D.Ala.1981); *In re Barth*, 4 B.R. 141, 143 n.6 (Bkrtcy.W.D.Mo. 1980). The Court adopts this latter view because it is consistent with the plain meaning of the Code and the legislative history. In addition, the majority view avoids unnecessary impediments to and intrusion upon criminal proceedings. The *Caldwell* reading of § 362(b)(1) casts a spectre over any criminal proceeding pending during a bankruptcy case because a finding that the § 362(b)(1) exception was inapplicable would render any act taken by the criminal court during the interim void as a violation of the § 362(a) stay. *In re Murray*, 5 B.R. 732, 733–34 (Bkrtcy.D.Md.1980). The majority view, on the other hand, permits criminal action to proceed unimpeded unless a party in interest makes an affirmative showing that circumstances warrant an injunction—a result consistent with Congressional policy that criminal proceedings not be automatically stayed.

The important inquiry is therefore a determination of what circumstances warrant an injunction under § 105 restraining a criminal prosecution against a Debtor. The nature of the moving force behind the

institution of the criminal proceeding is the determinative factor. Prosecutions instituted primarily to vindicate the public welfare by punishing criminal conduct of the Debtor and to discourage similar conduct of others are not usually interferred with by Bankruptcy Courts. When it is clear that the principal motivation is neither punishment nor a sense of public duty, but rather to obtain payment of a dischargeable debt either by an order of restitution or by compromise of the criminal charge upon payment of the civil obligation, the Bankruptcy Court may properly enjoin the criminal proceeding. *In re Kaping*, 13 B.R. 621, 623 (Bkrtcy.D.Or.1981); *Lake*, 11 B.R. at 205; *Reid*, 9 B.R. at 832; *Barth*, 4 B.R. at 144. *Cf. In re Penny*, 414 F.Supp. 1113, 1115 (W.D.N.C.1976) (applying the Bankruptcy Act of 1898). If the debt is subsequently found to be nondischargeable, then the Court should in most instances dissolve the injunction and permit the criminal prosecution to proceed because "no federal purpose would be served by continuing to enjoin the state prosecution." *In re Penny*, 414 F.Supp. at 1115. *Accord, In re James*, 10 B.R. at 4; *In re Barth*, 4 B.R. at 144. *Cf.* 11 U.S.C. § 522(c)(1) (Supp. IV 1980) (exempt property cannot be held liable for most nondischargeable debts).

The State argues that comity and federalism mandate that federal courts not enjoin state criminal proceedings unless they are brought for purposes of harassment or in bad faith without hope of obtaining a valid conviction. *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court agrees that the policy of respect for state functions manifest in "Our Federalism" and the *Younger* doctrine dictates that a Bankruptcy Court ought sparingly exercise its discretion to enjoin state court criminal prosecutions. 2 Collier on Bankruptcy ¶ 362.05[1] at 362–38 (15th ed. 1981). Nonetheless, the Court disagrees that *Younger* compels such a result here.

In *Younger*, the federal plaintiff sought to assert federal constitutional rights as a basis upon which to enjoin state criminal proceedings in which he was a defendant. Under such circumstances, the criminal defendant may assert defenses in state courts founded upon the U. S. Constitution without need for interference by the federal courts. When bankruptcy intervenes, however, a Debtor may seek to assert rights founded upon the Bankruptcy Code adopted by Congress pursuant to its plenary power under the Bankruptcy Clause of the U. S. Constitution. Congress has chosen to vest jurisdiction with respect to the Bankruptcy Code in a specialized tribunal, the Bankruptcy Court. 28 U.S.C. § 1471 (Supp. IV 1980). This Court is intended to be the focus for the implementation of the Congressional "scheme for sorting out the competing claims and interests present in bankruptcy proceedings." *In re Ryan*, 15 B.R. 514, 520 (Bkrtcy.D.Md.1981). *Younger* does not mandate that this Court abdicate its statutory role merely because creditors may seek to subvert the Debtor's rights under the Code through the guise of criminal proceedings. A Bankruptcy Court must exercise its jurisdiction to determine whether a given criminal proceeding has been instituted as a method for the collection of a civil debt dischargeable under the Code. Were bankruptcy courts to permit prosecutions which have as their ultimate purpose the collection of debts to proceed in state criminal courts unimpeded and unsupervised, an intolerable distortion of the elaborate machinery of the bankruptcy laws devised to fix the rights of creditors against the Debtor and the Debtor's property would be created. In such instances, comity dictates that federal, rather than state, interests prevail.

### III

The Court is not insensitive to the demands of society that State officials carry out their duty to prosecute vigorously the criminal laws. Likewise, the Court is of the firm conviction that the Bankruptcy Court not become a haven for those guilty of criminal wrongdoing. But, the realities of the instant "criminal" charges cannot be disregarded. The promptness with which

the Defendants sought criminal warrants is as equally consistent with self interest as it is with zealous interest in the public welfare. In addition, it is clear to the Court that the Defendants provided the sole impetus for the prosecution by the State's Attorney. The alleged criminal conduct was not uncovered as part of any independent investigation by State authorities. Moreover, notwithstanding a policy to the contrary the Defendant Widdowson's assistant apparently offered to "drop" both the theft and bad check charges were the Debtor to pay his civil obligation to the other named Defendants. Under such circumstances the Court is compelled to conclude that these criminal prosecutions were not instituted to vindicate the rights of the people of the State of Maryland, but rather to collect the civil claim of the complaining witnesses.

Furthermore, the Court cannot disregard the commercial objectives of the criminal sanctions imposed by the Maryland Bad Check Statute, Md.Ann.Code, Art. 27, §§ 140–144 (Supp.1981). In discussing the statutory predecessor to the current statute, the Maryland Court of Appeals pointed out that the "purpose of [The Maryland Worthless Check Act] is to facilitate commerce and banking by averting the inconvenience and expense of handling worthless checks through banking channels, and the difficulty of collecting bills from those who give worthless checks, as well as to reduce the hazard of the loss of merchandise obtained by such checks." *Kaufman v. State*, 199 Md. 35, 39, 85 A.2d 446, 448 (1951), cited with approval in *Riggs v. State*, 34 Md.App. 324, 328, 367 A.2d 22, 25 (1976). Notwithstanding the *bona fides* of the prosecution, the reality of the situation is that the State's Attorney is acting at least in part as a debt collection agency for complaining witnesses. Section 143· of the statute expressly provides that restitution may be ordered in addition to the criminal penalties of fine and punishment. Further, § 144 provides that irrespective of the drawer's criminal intent, no prosecution may be instituted if the drawer "makes the check good within ten days of dishonor."

No policy objective of either commercial or bankruptcy law justifies the conclusion that a holder of a check should enjoy a status superior to other unsecured creditors. Were the Bankruptcy Court not to scrutinize "bad check" prosecutions closely, a creditor could simply demand checks from financially troubled debtors solely as an expedient for subsequent collection of the obligation through the criminal courts should it be discharged. *See In re Anson*, 9 B.R. 741, 743 n.2 (Bkrtcy.W.D.Mo.1981). The Court is convinced that the Defendant employees here seek to benefit in part from the fortuity of having been named as payee on a check.

Although the theft statute does not have the strong tie to commercial expedience that underlies the "bad check" statute, the threat of prosecution is an equal incentive to pay a civil obligation with the expectation that the charge will be dropped. This is especially true when, as here, the alleged "theft" arises in a commercial context. There can be no doubt that under § 342(e) of Article 27 of the Maryland Annotated Code a conviction can properly lie for theft of services. It is equally clear that in this instance the Defendants seek to use the statute as leverage for the collection of their wage claims against the Debtor.

The civil wage claims of the individual Defendants have been discharged in the Debtor's Chapter 7 case. The Defendants have not sought a timely determination of the nondischargeability of their claims for wages. Those claims, if allowed, would undoubtedly be afforded a third priority under § 507(a)(3) for purposes of distribution. The Court cannot permit such claimants now to exact payment outside the bankruptcy proceedings by use of the threat of criminal prosecution. Accordingly, both the Defendant employees and the State's Attorney should be permanently enjoined from the prosecution of criminal charges founded upon the Debtor's nonpayment of wages owed to employees of The Crisfield Garment Co.

For the above reasons, it is this 31st day of December, 1981, by the United States

Bankruptcy Court for the District of Maryland

ORDERED, ADJUDGED and DECREED that the State's Attorney for Somerset County, Maryland, and all the individuals named as Defendants in this Adversary Proceeding should be, and the same are hereby perpetually and PERMANENTLY ENJOINED from bringing, or continuing, criminal proceedings or execution thereon against CRIPPEN JAMES TAYLOR for any charge arising out of the events described in this Memorandum Opinion and Order; and it is

FURTHER ORDERED that a copy of this Memorandum Opinion and Order shall be mailed forthwith by regular mail by the Clerk of the Court to all counsel and each named Defendant.