In the Matter of TENPINS BOWLING, LTD., Debtor.

TENPINS BOWLING, LTD., Plaintiff,

v.

Howard ALDERMAN, Jr., Phillip Gohman, David Merritt, Pam Cross, Jimmy McCall, Dale Grogg, Diana Spitzer, Ed Johnson, Perry Judy, Otho Sanders, Sally Alderman, Geraldine Crawford, Penny Eure, Richard Grogg, Sally Gurley, Cindy Henemeyer, Robert Lassiter, John Woodford, Rose Hind, Keith Wilson, Cindy Simmons, Jo Spurlin, Gina McGlamry, Keith Sadler, Craig Hendricks, Beverly Cross, Lori Moore, Ruth Cooper, Joey Bush, Lee Cravens, Jerry Brim, Derek Rogers, Jay Etherton, Pat Thompson, Gene Nelson, Karl Barry, Emory Davidson, Haywood Barnes, Vince Hill, Tommy Williams, Scott Ellis, Samuel Washington, Darrell McCot, Robert Meserve, Holly Meserve, Wayne Reno, Jeff Stansell, Jackie Bedilion, Dian Daigrepont, Mary Simmons, Christi Gray, Charles Gray, Sheila Hall, Maxie Harris, Glenn Lashley, Kathy Reliford, Ronnie Cleveland, Michelle Davis, Dorothy Flowers, Edward Etheridge, Mark Medeiros, Glenn Goff, Mark Ellis, Judy Howley, Laura Nolan, Darlene Etherton, Glenda McKenney, Rhonda Corbitt, Dale Ammons, Nancy Spain, Ned Harris, Joyce Ferrell, Carolyn Wall, Barbara Kennibrew, Opal Brown, Bob Wood, Andy Ransom, Danny Flournoy, Ted Stokes, Mike Boone, Susan English, Chris Medlock, Carol Watkins, Defendants.

TENPINS BOWLING, LTD., Plaintiff,

v.

Hobart M. HIND, In His Official Capacity as District Attorney of Dougherty County Georgia, and Howard Alderman, Jr., Phillip Gohman, Daniel Merritt, Pam Cross, and Jimmy McCall, Defendants.

TENPINS BOWLING, LTD., Plaintiff,

v.

Jon WOODFORD, Ed Johnson, Perry Judy, Otho Sanders, Penny Eure, Robert Lassiter, Rose Hind, Keith Wilson, Jo Spurlin, Gina McGlamry, Keith Sadler, Craig Hendricks, Beverly Cross, Lori Moree, Ruth Cooper, Joey Bush, Jay Etherton, Emory Davidson, Vince Hill, Scott Ellis, Samuel Washington, Darrell McCot, Wayne Reno, Jeff Stansell, Mary Simmons, Christi Gray, Charles Gray, Glenn Lashley, Kathy Reliford, Dorothy Flowers, Edward Etheridge, Glenn Goff, Mark Ellis, Judy Howley, Glenda McKenney, Rhonda Corbitt, Barbara Kennibrew, and Jessie Glover, and Hobart M. Hind, Individually, and in his official capacity as District Attorney of Dougherty County, Georgia, and D. Lamar Stewart, Sheriff, Dougherty County, Georgia, Defendants.

Bankruptcy No. 83–50580–Mac.

Adv. Nos. 83–5159, 83–5160 and 83–5163.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

July 30, 1983.

Order on Motion for Stay of Order Pending Appeal Aug. 12, 1983.

MEMORANDUM OPINION ON COMPLAINTS FOR INJUNCTION

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

## STATEMENT OF THE CASE

On May 20, 1983, Tenpins Bowling, Ltd., d/b/a Silver Saddle, Key Largo, and Galaxy Lanes (hereinafter Debtor) filed with this Court its petition under Chapter 11 of the Bankruptcy Code. On May 25, 1983, Debtor filed with the Court a "Complaint for Injunction" (Adv.Proc. No. 83–5159). The complaint, as amended, requests that the Court enjoin some eighty-three named employees of Debtor from causing criminal warrants to issue for the arrest of officers, directors, shareholders, or other employees of Debtor for the offense of theft of services.[1] Because of the emergency nature of the complaint, by order dated May 25, 1983, the Court ordered that a preliminary hearing on the complaint be held on May 27, 1983. The matter came on to be heard by the Court on May 27, 1983. By order dated June 1, 1983, the Court preliminarily enjoined Defendants from causing criminal warrants to issue against Mrs. Lena Ray, president of Debtor. The Court scheduled a hearing for July 15, 1983 on whether to grant a permanent injunction.

On May 25, 1983, Debtor also filed with the Court another "Complaint for Injunction" (Adv.Proc. No. 83–5160) in which Debtor requests that the Court enjoin Hobart M. Hind, in his official capacity as District Attorney of Dougherty County, Georgia, from prosecuting warrants taken out by employees of Debtor. The Court also ordered that a preliminary hearing on the second complaint be held on May 27, 1983. Before the commencement of the hearing, the parties advised the Court that they had agreed to continue the hearing and to extend the time for Mr. Hind's filing of an answer. On June 2, 1983, Debtor filed a "Motion to Accelerate Trial Date on Preliminary Injunction and to Shorten Time for Filing Answer to Plaintiff's Complaint."

Jerome L. Kaplan, Ward Stone, Jr., James P. Smith, Kaplan, Thomason & Stone, P.A., Macon, for plaintiff.

Hobart M. Hind, Dist. Atty., pro se, Albany, Ga., John Hogg, Asst. Dist. Atty., Albany, Ga., for Hobart M. Hind.

---

1. Official Code of Ga.Ann. § 16–8–5 (Michie 1982).

In its motion, Debtor alleged that contrary to the agreement of counsel, Mr. Hind had not suspended his investigation or prosecution of Mrs. Ray. Debtor's motion was granted by the Court, and a preliminary hearing on Debtor's complaint against Mr. Hind was set for June 3, 1983.

On June 2, 1983, Debtor moved to add Howard Alderman, Jr., Phillip Gohman, Daniel Merritt, Pam Cross, and Jimmie McCall as defendants to the complaint against Mr. Hind, and the motion was granted. The matter came on to be heard on June 3, 1983. On June 3, 1983, with the concurrence of all counsel, the Court preliminarily enjoined Mr. Hind from prosecuting warrants taken out against Mrs. Ray.[2] The Court scheduled a hearing for July 15, 1983 on whether to issue a permanent injunction.

On June 3, 1983, Debtor instituted a third adversary proceeding by filing with the Court a "Complaint Seeking Temporary Restraining Order, Preliminary Injunction and Permanent Injunction" (Adv.Proc. No. 83–5163). The complaint alleges that certain defendants were named in either Adversary Proceeding Number 83–5159 or 83–5160, but were not served in these adversary proceedings, and that one Jon Woodford did, on June 2, 1983, cause an additional warrant to issue for the arrest of Mrs. Ray. In this third adversary proceeding, Debtor also seeks to have the Court enjoin the Sheriff of Dougherty County from serving warrants taken out by employees of Debtor.

On June 3, 1983, the Court granted a temporary restraining order and set a hearing for June 7, 1983 to consider Debtor's motion for a preliminary injunction. On June 7, 1983, the Court issued a preliminary injunction and scheduled a hearing for July 15, 1983 on whether to grant a permanent injunction.

On July 15, 1983, the three adversary proceedings were called for final hearing.

At that time, Debtor moved to consolidate the three adversary proceedings, and Debtor's motion was granted without objection. The Court then conducted a final hearing on the consolidated adversary proceedings, at which Mr. Hind put up evidence.[3]

After reviewing the evidence and considering the arguments and briefs of counsel, the Court is of the opinion that a permanent injunction should not issue. In support of its conclusion, the Court publishes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Debtor operates a large entertainment complex in Albany, Georgia. The complex consists of a forty-eight-lane bowling facility, known as the Galaxy Lanes, and two nightclubs, the Silver Saddle and Key Largo. The Silver Saddle, the larger nightclub, is designed to accommodate large audiences, and is often used for large-scale concerts by national recording artists. The complex employs approximately eighty people.

Mrs. Lena Ray is president and sole stockholder of Debtor. She also runs Debtor's entertainment complex on a day-to-day basis.

Due to declining business, Debtor was unable to make its Friday, May 13, 1983 payroll. On that date, a note was posted stating that the wages due that day would not be paid, but would be paid on Monday, May 16, 1983. On each day of the week commencing with May 16, 1983, Mrs. Ray or another representative of Debtor promised the employees that they would be paid the following day. During the week, Mrs. Ray represented to the employees that a person had gone to Louisiana to obtain money for the payroll. By the end of the week, Debtor still was unable to meet the payroll, and Debtor filed its Chapter 11 case on Friday,

---

**2.** The preliminary injunction was not directed toward the five individuals Debtor added by amendment since they were not served with process.

**3.** None of the other named defendants were represented by counsel at the July 15, 1983 hearing. The defendants in attendance were advised that they could participate in the hearing, but none chose to do so.

May 20, 1983. On the day Debtor filed its Chapter 11 case, Mrs. Ray called an employees' meeting and informed the employees that a Chapter 11 case had been filed. On the date of filing, the employees were owed approximately $28,000.00 in wages.

Prior to the filing of Debtor's Chapter 11 case, Mrs. Ray borrowed $27,518.23 on a personal note from RayCo, Inc., a Louisiana corporation. Mrs. Ray was the major shareholder of RayCo. The $27,518.23 that Mrs. Ray borrowed from RayCo represented substantially all of RayCo's assets. Mrs. Ray used the loan from RayCo to pay part of a $30,000.00 retainer fee to Debtor's law firm, Kaplan, Thomason & Stone, P.A. The retainer was paid on May 20, 1983, the day that the Chapter 11 case was filed. Mrs. Ray had hoped the loan from RayCo would realize enough money to pay both the attorneys and the employees. When she discovered the funds were insufficient to pay both, she elected to apply the entire $27,-518.23 to the attorneys' retainer fee. The remaining $2,481.77 of the $30,000.00 retainer fee was paid from funds of Debtor.

Beginning on Monday, May 23, 1983, some of Debtor's employees began to take out criminal warrants for the arrest of Mrs. Ray for theft of services.[4] Mrs. Ray's son, Mr. Rigby Maulpin, was named as co-defendant in the warrants. The testimony of several of the employees is that they took out the warrants for the purpose of recouping their unpaid wages. The warrants resulted in the arrest of Mrs. Ray.

In taking out the criminal warrants for the arrest of Mrs. Ray, the employees first visited the Dougherty County District Attorney's office. There the employees talked to the District Attorney, Mr. Hobart M. Hind, or his assistant, Mr. John Hogg. The employees were then referred to the State Court of Dougherty County, Georgia, where the warrants were issued.

The evidence reveals that Mr. Hind and his wife, Rose Hind, had past connections with Debtor's entertainment complex. Mr. Hind, for a number of years, bowled at the complex and prior to Debtor's acquisition of the complex, sold refinished bowling pins to the complex. Mrs. Hind is a former employee of Debtor. Prior to Debtor's purchase of the complex, Mrs. Hind worked at the Silver Saddle in advertising. After the complex was purchased by Debtor, Debtor hired Mrs. Hind to work as the bowling league coordinator. Mrs. Hind, however, continued to book and advertise acts for the Silver Saddle.

The relationship between Mrs. Hind and Debtor was terminated after a dispute arose concerning one of the shows booked by Mrs. Hind. Mrs. Hind herself booked and financed the Mickey Gilley show, and she was to receive a share of the profits produced by the show. The show was scheduled for April 28, 1983. A dispute arose concerning the number of tickets that could be sold. Mrs. Hind wished to sell as many tickets as possible in order to maximize her profits. Debtor, however, feared that excess ticket sales would result in a fire code violation. An agreement was reached for Debtor to compensate Mrs. Hind and take over the show. The relationship between Mrs. Hind and Debtor terminated when Mrs. Hind contended that she was owed additional money by Debtor.

In the early part of May (prior to May 20, 1983), Mr. Hind approached Mr. Karl Deiter, Business License Inspector and City Marshall of Albany, and inquired as to who held the liquor license for the Silver Saddle. Mr. Deiter testified that when he inquired of Mr. Hind as to his motive, Mr. Hind responded, " 'Well, through a sale of some tickets, they have beat my wife out of some money, and I want to know who I can get hold of to help her recoup what she feels she has lost.' " Mr. Deiter told Mr. Hind that the license was held by Nancy Spain. Mr. Deiter testified that Debtor's liquor license was in Ms. Spain's name because

---

**4.** Official Code of Ga.Ann. § 16–8–5 (Michie 1982) provides:

    A person commits the offense of theft of services when by deception and with the intent to avoid payment he knowingly obtains services, accommodations, entertainment, or the use of personal property which is available only for compensation.

liquor licenses were always issued to an individual, rather than a corporation. Ms. Spain was corporate secretary and bookkeeper for Debtor.

On Thursday, May 26, 1983, Ms. Spain received a telephone call in which an unidentified called stated that Ms. Spain should terminate her association with Debtor if she valued her well-being. On Friday, May 27, 1983, Ms. Spain resigned as bookkeeper of Debtor. On Monday, May 30, 1983, the Albany Chief of Detectives informed Mr. Deiter that Ms. Spain had resigned. Mr. Deiter testified that when a license is issued to an individual and that individual leaves, the establishment licensed must close. Therefore, Mr. Deiter called Ms. Spain on Monday, May 30, 1983, to inquire as to whether she had resigned. Ms. Spain told Mr. Deiter that she had resigned as an active employee of Debtor, but would remain a corporate officer. . Ms. Spain promised to notify Mr. Deiter if she decided to resign as an officer. On or about Wednesday, June 1, 1983, Mr. Hind caused a note to be delivered to Mr. Deiter, informing him that Ms. Spain had resigned. Mr. Deiter did not respond to this note since he had called Ms. Spain just two days prior. On the same day, June 1, 1983, Ms. Spain was told by a friend that she was in very serious trouble with the District Attorney's office because of her election to remain a corporate officer of Debtor. After this call, Ms. Spain testified that she typed up her resignation as corporate secretary. As of June 3, 1983, however, Ms. Spain had not submitted her resignation as corporate secretary.[5]

In response to this Court's grant of a preliminary injunction in Adversary Proceeding Number 83–5159, Mr. Hind was quoted as follows:

This judge has not taken into account the possibility that six months from now, a Chapter 11 reorganization will not be granted the corporation.

In the event it is not, only those Dougherty County citizens who swore out warrants will have the possibility of restitution from the individual charged with theft of services . . . .

Albany Herald, May 28, 1983, at 3A, col. 6.

Mrs. Ray's testimony is that since the warrants were issued for her arrest, Debtor's business has decreased considerably. She further testified that the time spent defending the warrants has precluded her from properly overseeing the daily affairs of Debtor. Finally, she testified that the warrants have caused publicity adverse to Debtor.

## CONCLUSIONS OF LAW

Section 105(a) of the Bankruptcy Code provides:

The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C.A. § 105(a) (West 1979). In applying section 105(a), the Court must recognize certain basic limitations upon the Court's authority to issue orders, processes, or judgments.[6]

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court of the United States held that a federal court must refrain from enjoining state criminal proceedings unless extraordinary circumstances are present. The Court held that a federal court could not properly enjoin a state criminal proceeding except upon a showing that great, immediate, and irreparable harm will occur without federal interference and that the threat to a feder-

---

**5.** The Court notes that almost all of the evidence adverse to Mr. Hind was presented at the June 3, 1983 hearing. Although Mr. Hind was served with process, he did not attend the June 3, 1983 hearing and thus was unable to cross-examine witnesses or present evidence in his behalf. Upon Mr. Hind's stipulation, the transcript of the June 3, 1983 hearing was admitted into evidence at the July 15, 1983 hearing on

whether to issue a permanent injunction. *See* Fed.R.Civ.P. 65(a)(2).

**6.** The Court need not consider whether 28 U.S.C.A. § 2283 (West 1978) limits its authority under section 105(a) because it has declined to issue a permanent injunction on other grounds.

ally protected right must be a threat that cannot be eliminated through a defense in the state proceeding. *Id.* at 46, 91 S.Ct. at 751. The Court noted that the cost, anxiety, and inconvenience of having to defend a state criminal proceeding would not constitute irreparable harm within the meaning of its holding. *Id.*

The Court in *Younger* based its holding on the unique relationship between the state and federal governments. The Court noted:

This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. at 750.

In *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), upon which the *Younger* Court relied, the Supreme Court held that a suit to enjoin threatened criminal proceedings, although not yet instituted, would be proper only in specific circumstances. The Court noted that federal courts should be reluctant to enjoin a state prosecutor:

*Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.

*Id.* at 243–44, 46 S.Ct. at 493.

The United States Court of Appeals for the Eleventh Circuit recently held that the principles of *Younger* are applicable when a bankruptcy court is asked to enjoin a state criminal proceeding against a debtor. In *Barnette v. Evans,* 673 F.2d 1250 (11th Cir. 1982), the debtor wrote $37,000.00 worth of bad checks and subsequently filed his case in bankruptcy. Then the debtor was indicted by an Alabama grand jury for theft by deception. The bankruptcy court enjoined both the creditor to whom the debtor had written the checks and the local district attorney from prosecuting the debtor. The bankruptcy judge reasoned that because Alabama law required mandatory restitution to the recipient of the bad checks, the prosecution might result in the collection of a debt that might be dischargeable in bankruptcy. In reversing the bankruptcy court, the Eleventh Circuit noted:

The basic error of the bankruptcy judge was to misjudge the width of his turf. The purpose of bankruptcy is to protect those in financial, not moral, difficulty. The bankruptcy courts were not created as a haven for criminals. There is a public interest in every good faith criminal proceeding, especially on the

presentment of a grand jury, which overrides any interest the bankruptcy court may have in protecting the financial interest of debtors.

*Id.* at 1251 (citations omitted).

The court in *Barnette* held that the principles of *Younger* are applicable to a bankruptcy court in exercising its authority under section 105(a). The court, after applying the *Younger* tests, found no great and immediate danger of injury. Any threat of injury, said the court, would be "hypothetical at best" because the bankruptcy court had made no determination that the bad check debt was dischargeable in bankruptcy. *Id.* at 1252.

The court in *Barnette* also addressed the contention that the criminal process was being used as a method of debt collection. The court noted:

> Some district courts have interfered with state criminal proceedings only where subversion of the criminal process to collect debt was found. If Barnette believed the prosecution for theft was a subterfuge for collection of a debt, he could have raised the issue as a defense in the state criminal proceeding. In *Younger* terms, Barnette may have contested the purported debt collection in a single criminal proceeding. In any event, there was no finding of abuse of the criminal process made in the instant case. The bankruptcy judge's concern was that "[t]he necessary effect of conviction then, is to collect a debt dischargeable in bankruptcy."

*Id.* at 1252 (citations omitted).

From the above precedent, this Court concludes that a bankruptcy court must move cautiously before enjoining individuals from proceeding with criminal warrants. The punishment or release of one accused of violating state criminal statutes is generally within the province of the state. It is only upon a showing of extraordinary circumstances where there is a threat of immediate and irreparable injury and the underlying prosecution is brought in bad faith that a bankruptcy court should interfere with the state's right to prosecute those accused of violating its criminal statutes.

Debtor argues that the criminal proceedings against Mrs. Ray were instituted to collect a debt and cites to the Court the case of *Taylor v. Widdowson (In re Taylor)*, 16 B.R. 323, 8 Bankr.Ct.Dec. 692, 5 Collier Bankr.Cas.2d 1201 (Bkrtcy.D.M.D.1981). In that case, the court held that a bankruptcy court could properly enjoin a state criminal proceeding "[w]hen it is clear that the principal motivation is neither punishment nor a sense of public duty, but rather to obtain payment of a dischargeable debt either by an order of restitution or by compromise of the criminal charge upon payment of the civil obligation . . . ." *Id.* at 326, 8 Bankr. Ct.Dec. at 693, 5 Collier Bankr.Cas.2d at 1205.

The Court notes, however, that the Eleventh Circuit in *Barnette* rejected the "principal motivation" test and adopted a "bad faith" test to be applied when a bankruptcy court considers enjoining a state criminal prosecution. The court in *Barnette* seeks to protect the "good faith" prosecution. 673 F.2d at 1251. Thus, *Barnette* requires that a bankruptcy court refuse to enjoin a state criminal proceeding unless that proceeding is brought in bad faith. *See Lare v. Norton (In re Lare)*, 24 B.R. 959, 962, 9 Bankr.Ct. Dec. 1428, 1429 (D.M.D.1982) (bad faith test of *Barnette* more in line with principles of *Younger* than principal motivation test). Thus, Debtor must make an affirmative showing that the prosecution against Mrs. Ray was brought in bad faith. Also, *Barnette* requires that a bankruptcy court refuse to enjoin a state criminal proceeding if the debtor could adequately raise the debt collection defense in the state proceeding. 673 F.2d at 1252. In these adversary proceedings, Debtor has not shown that Mrs. Ray could not raise this defense in state court. *See Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 179 (3d Cir.1982) (Bankruptcy court properly refused to enjoin state criminal prosecution of debtor when there was no showing that the state acted in bad faith or the state had inade-

quate procedures for hearing the debtor's defense).

This Court can perceive of no bad faith on the part of the employees who swore out the warrants. Nor has there been a showing that the criminal proceedings against Mrs. Ray were brought solely for the purpose of collecting a debt. It is true that several of the complaining employees testified that, through swearing out warrants, they hoped to recoup the wages due them. The Court is of the opinion, however, that this by itself is insufficient to show that the prosecution of Mrs. Ray was a subterfuge for debt collection. In *Wagner v. Miller (In re Wagner)*, 18 B.R. 339, 8 Bankr.Ct.Dec. 1065, 6 Collier Bankr.Cas.2d 317 (Bkrtcy.W. D.Mo.1982), the debtor sought to have a bankruptcy court enjoin his worthless check prosecution, contending that the prosecution was a subterfuge for debt collection. Even though the debtor was given the option of making payment on the bad checks and avoiding prosecution in the state criminal proceeding, the bankruptcy court found that the debtor had not shown that the prosecution was a guise for debt collection. The Court noted:

> The sole issue is whether these prosecutions are a guise for a collection effort. It is true that debtor was offered an opportunity to pay and avoid prosecution. It is also true that the various complainants would like their money. But neither the opportunity to repay nor the motions of the complainants controls the motives of the prosecutor who protects the interests of the citizenry generally. Debtor has failed to prove that these prosecutions have the purpose of collecting the debt.

*Id.* at 340, 8 Bankr.Ct.Dec. at 1066, 6 Collier Bankr.Cas.2d at 318–19. Similarly, in *Davis v. Sheldon (In re Davis)*, 691 F.2d 176 (3d Cir.1982), the Chapter 7 debtors sought to have a bankruptcy court enjoin a state worthless check prosecution against them. In refusing to enjoin the state proceedings, the bankruptcy court rejected the debtors' argument that the creditors to whom the debtors had written worthless checks had instituted the criminal proceedings as a method of debt collection.

> [The debtors] assert that it was improper for the state to act upon these claims because there was no state interest being protected; only the financial interest of the creditors was furthered. The state, however, is prosecuting the criminal actions on behalf of all of the citizens of Delaware, to protect the integrity of commercial transactions within the state. The [debtors] have made no showing that the Attorney General had any reason to doubt the validity of the charges, that he failed to exercise independent judgment in continuing these prosecutions, or that the complaining witnesses had insufficient evidence to support their allegations. We cannot require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution. Under these circumstances, the intentions of the complaining witnesses are not controlling in judging the good faith of a criminal prosecution.

*Id.* at 178–79. *See also, Richardello v. Garrick (In re Richardello)*, 28 B.R. 344, 347, 10 Bankr.Ct.Dec. 743, 745 (Bkrtcy.D.Mass. 1983) (an offer to drop charges in return for payment does not indicate that criminal proceedings were a debt collection mechanism).

It is the prosecutor, through the use of his sound discretion, who asserts the rights of the state to prosecute individuals for alleged criminal conduct. The fact that the complaining parties may have other motives does not alter the state's interest in prosecuting alleged criminal offenders.

There has been no showing that Mr. Hind influenced employees of Debtor prior to their taking out of warrants against Mrs. Ray. There also has been no showing that Mr. Hind is using the criminal process solely as a means of debt collection. There is evidence that Mr. Hind's wife, Rose Hind, had a disputed claim against Debtor, but there is no evidence that Mr. Hind caused the warrants to issue for the purpose of

collecting her claim. While the evidence presented does give the Court some concern as to the workings of the criminal processes in Dougherty County, the showing is not sufficient for the Court to find bad faith. It may be questioned by the Court whether the criminal proceedings against Mrs. Ray are in the best interest of the state, but that also is not sufficient ground for this Court to issue a permanent injunction.

In these adversary proceedings, there is no showing that Mr. Hind abused his discretion. Testimony reveals that Debtor's representatives repeatedly promised the employees they would be paid all their missed wages and the testimony further reveals no mention of a possible bankruptcy.[7] Several employees testified that they would not have continued to work had they known all the facts.[8]

Counsel for Debtor states that he "questions the motives of Mr. Hind." That may be the case, but what is required by *Younger* and *Barnette* is a showing of impropriety on Mr. Hind's part. Debtor points to no specific evidence that the prosecutions were brought in bad faith or brought merely to collect a debt. In sum, Debtor has not sustained its burden either under the "principal motivation" test upon which it relies or the "bad faith" test.

In closing, the Court is compelled to note that certain back wages are afforded a high priority of payment within the bankruptcy process.[9] The bankruptcy process itself thus has protection for wage earners who are owed back wages by distressed businesses. It should be noted further that Congress has determined that it is better to reorganize a distressed business under Chapter 11 than to liquidate it. A successful reorganization is less stressful on a community, because it enables the business to continue as a viable member of the community and thus saves the jobs of employees within that community. Patience is oftentimes needed in a Chapter 11 reorganization case, so that the greatest number of individuals within the community can benefit from the reorganization process.

## ORDER ON MOTION FOR STAY OF ORDER PENDING APPEAL

■ Debtor Tenpins Bowling, Ltd. (hereinafter Debtor) instituted these adversary proceedings to enjoin the criminal prosecutions of its officers, directors, shareholders, and employees. The injunctive relief was sought when several employees of Debtor swore out warrants for the arrest of Mrs. Lena M. Ray, president and sole shareholder of Debtor.[1] After a full hearing on the merits, this Court, by order dated July 30, 1983, vacated the preliminary injunctions that it had issued in these adversary proceedings and declined to issue a permanent injunction. Debtor has appealed to the United States District Court for the Middle District of Georgia. Before the Court is the motion of Debtor to stay this Court's order of July 30, 1983 pending appeal to the district court. The motion came on to be heard by the Court on August 10, 1983, and only one of the eight-five named defendants chose to appear.[2]

Debtor's motion to stay this Court's order pending appeal is based on R.Bankr.P. 8005, which provides:

---

**7.** Debtor's Board resolved to file for reorganization on May 6, 1983.

**8.** In deciding these adversary proceedings, the Court does not express any opinion as to the guilt or innocence of Mrs. Ray under the Georgia criminal statutes. Rather, the Court only concludes that the principles of *Younger* and *Barnette* require that the state be given the chance to hear the complaints of its citizens since Debtor has not shown that the prosecutions were initiated in bad faith.

**9.** 11 U.S.C.A. § 507(a)(3) (West 1979).

**1.** The Court's findings of fact in these adversary proceedings are set out in this Court's opinion dated July 30, 1983 and need not be restated.

**2.** Jon Woodford, who swore out one of the warrants for the arrest of Mrs. Ray, appeared and was heard by the Court. Mr. Hobart M. Hind, District Attorney of Dougherty County did not appear to represent the state's interest. On the eve of the hearing, Mr. John Hogg, Assistant District Attorney of Dougherty County, notified the Court that neither he nor Mr. Hind intended to appear or to be represented at the hearing.

A motion for stay of the judgment, order, or decree of a bankruptcy court, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance in the bankruptcy court. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy court may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by the bankruptcy court, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy court. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States a bond or other security shall not be required.

Under former R.Bankr.P. 805, which is substantially similar to rule 8005, a bankruptcy court was required to consider certain factors in deciding whether to stay its order pending an appeal. Those factors include:

1. Whether the appeal is likely to be successful on the merits.

2. Whether there is a threat of irreparable harm to a party if the stay is not granted.

3. Whether delay in the implementation of the court's order would cause harm to the parties or to the public.

See *Karbach Enterprises v. Exennium, Inc. (In re Exennium, Inc.)*, 23 B.R. 782, 9 Bankr.Ct.Dec. 979 (Bkrtcy.App. Panel 9th Cir.1982); *In re White Motor Credit Corporation*, 11 B.R. 294, 7 Bankr.Ct.Dec. 885, 4 Collier Bankr.Cas.2d 591 (Bkrtcy.N.D.Ohio 1981); *In re Hotel Associates, Inc.*, 7 B.R. 130, 6 Bankr.Ct.Dec. 1323 (Bkrtcy.E.D.Pa. 1980).

Fed.R.Civ.P. 62(c), applicable in bankruptcy proceedings under R.Bankr.P. 7062, provides in part:

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. . . .

The following standards should be applied by the Court under Fed.R.Civ.P. 62(c):

[I]t generally is required that (a) the applicant make a strong showing that he is likely to succeed on the merits of the appeal; (b) the applicant establish that unless a stay is granted he will suffer irreparable injury; (c) no substantial harm will come to other interested parties, and (d) a stay would do no harm to the public interest.

11 *C. Wright & A. Miller, Federal Practice and Procedure* § 2904 (1973).

In assessing the equities of staying or refusing to stay its order under the above-stated legal authority, the Court notes the case of *Ruiz v. Estelle*, 650 F.2d 555 (5th Cir.1981) (Unit A), *cert. denied*, —— U.S. ——, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).[3] In that case, a prisoner brought suit in federal district court alleging that practices of the Texas Department of Corrections were unconstitutional. The district court issued an injunction that required changes in the state's prison system. The state appealed and requested a stay of the injunction pending appeal. The Fifth Circuit, un-

---

**3.** Although this United States Bankruptcy Court sits in the Eleventh Circuit, it is bound by all decisions of the former Fifth Circuit handed down prior to the close of its business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

der Fed.R.App.P. 8, first noted the factors to be considered in addressing the state's motion:[4]

These factors are (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*Id.* at 565.

In addressing the first factor, the court noted:

[We] hold that on motions for stay pending appeal the movant need not always show a "probability" of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay. If a movant were required in every case to establish that the appeal would probably be successful, the Rule would not require—as it does—a prior presentation to the district judge whose order is being appealed. That judge has already decided the merits of the legal issue. The stay procedure of Fed.R.Civ.P. 62(c) and Fed.R.App.P. 8(a) affords interim relief where relative harm and the uncertainty of final disposition justify it. Of course, if the balance of equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then made a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal.

*Id.* at 565–66 (citations omitted).

In considering Debtor's motion to stay this Court's order of July 30, 1983, the

Court is of the opinion that Debtor has not made a strong showing of a likelihood of success on appeal, especially in light of the Eleventh Circuit Court of Appeal's decision in *Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982). The Court, however, realizes that since it has already decided the legal issues in these consolidated adversary proceedings, it may not be in the best position to assess Debtor's position on appeal. The Court acknowledges that these adversary proceedings present an important legal question for Debtor.

The Court is convinced that the equities weigh heavily in favor of granting a stay pending appeal. Presently, only six warrants have issued for the arrest of Mrs. Ray. Approximately seventy-seven other employees could take out warrants against Mrs. Ray. Mrs. Ray testified that defending the warrants has taken her away from Debtor's day-to-day operation. Additional warrants would further impede Mrs. Ray's operation of Debtor's business and could possibly distract her from her efforts to reorganize Debtor. Additionally, the warrants have caused publicity adverse to Debtor, and have caused its business to decrease considerably. Thus, staying this Court's order could prevent irreparable harm to Debtor. The state, on the other hand, has made no showing at all that it will be harmed by a stay of this Court's July 30, 1983 order. The criminal prosecution of Mrs. Ray may be delayed, but it can always go forward in the event Debtor is not successful on its appeal.[5] Thus, there has been a showing of harm to the Debtor and a showing of no harm to the state. In the Court's view, this is a sufficient showing for the Court to grant the relief sought by Debtor.

Accordingly; it is

---

4. Although *Ruiz v. Estelle* was decided under Fed.R.App.P. 8, it can be seen easily that the standards to be applied under that rule are essentially the same as those applied under R.Bankr.P. 8005 and Fed.R.Civ.P. 62(c).

5. Mr. Woodford testified that he would like to see his claim against Debtor for wages settled

as soon as possible. The Court notes that the criminal processes are not a device for debt collection. *See Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982). It is proper for Mr. Woodford's claim against Debtor to be dealt with in Debtor's Chapter 11 case.

ORDERED that this Court's order dated July 30, 1983, which denied Debtor a permanent injunction and which vacated this Court's preliminary injunctions, is hereby stayed pending appeal to the United States District Court for the Middle District of Georgia; and it is further

ORDERED that the defendants in these consolidated adversary proceedings who have been duly served are enjoined from taking out or prosecuting criminal warrants against Mrs. Lena M. Ray, which allege violations of section 16–8–5 of the Georgia Code, pending an appeal of this Court's July 30, 1983 order to the United States District Court for the Middle District of Georgia; and it is further

ORDERED that this order shall automatically terminate in the event this Court's July 30, 1983 order is affirmed by the United States District Court for the Middle District of Georgia or in the event the appeal is dismissed; and it is further

ORDERED that this order be entered on the dockets on the date set out below.

SO ORDERED this 12th day of August, 1983.