**In re John Theodore HANSEN, Debtor,**

**John Theodore HANSEN, individually, and dba Hansbilt Construction and Mr. Roofer, Plaintiff,**

v.

**STATE OF WASHINGTON KITSAP COUNTY PROSECUTING ATTORNEYS, Allan Wingo and Ken Loomis, Defendants.**

**Bankruptcy No. 84–00090–W7.**
**Adv. No. A84–0458.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

March 19, 1985.

C. Danny Clem, Pros. Atty., Kitsap County, Port Orchard, Wash., for defendants.

John S. Tracy, Tracy & Gleysteen, Bremerton, Wash., for debtor/plaintiff.

Memorandum Decision and Order

SIDNEY C. VOLINN, Bankruptcy Judge.

## I. FACTS

The debtor filed a Chapter 7 bankruptcy petition on January 11, 1984. His scheduled debts included one owing to Ken Loomis dba/K & L Design, and another owing to one, Allen Wingo. The creditors received notice of the filing of the bankruptcy and the meeting of creditors convened on March 6, 1984 pursuant to 11 U.S.C. § 341. Mr. Loomis attended the foregoing meeting and made inquiry of the debtor.

Creditors were notified that May, 1984 was set as the last day for filing exceptions or objections to the debtor's discharge. No objection having been made, the debtor was issued a discharge on May 16, 1984. No creditor within the time set, or thereafter, excepted to the discharge of the debtor pursuant to 11 U.S.C. § 523.

As a result of investigation of complaints concerning n.s.f. checks by the debtor, particularly that of Mr. Loomis, the prosecuting attorney of Kitsap County, Washington filed a criminal information, pursuant to RCW 9A.56.060, on March 5, 1984, charging the debtor with unlawful issuance of a bank checks. An arrest warrant was issued the same day but was not served on the debtor until on or about June 17, 1984.

The creditors who were issued checks which are the subject of the criminal action, are listed in the debtor's schedules, to-wit:

| # 13 | K & L Design, Ken Loomis | $680.00 |
| # 28 | Allen Wingo | $875.00 |
| # 29 | Allen Wingo | $1,200.00 |

The debtor testified that he thought he had made a deposit of $3,900 at or about the time of the Loomis check. However, there is no documentary evidence corroborating this assertion and one may infer from the fact that the bank closed the account because of an excess of n.s.f. checks, that there was no basis for there being sufficient funds in the account other than the debtor's bare assertion. At the time the Loomis check was presented there was only $23.50 in the debtor's account. The bank decided to close the account because the debtor had issued some 57 n.s.f. checks. It is clear that the debtor had no reason to believe that he had sufficient funds in his account to cover the checks in question.

The state has suspended prosecution of the criminal action pending resolution of the issue as to whether or not the bankruptcy court should enjoin such a prosecution. The state has indicated that it intends to prosecute only as to the Loomis check because it was to have paid for a contemporaneous consideration rather than a past due account as in the case of Wingo.

## II. CONTENTIONS OF PARTIES

### A.

The debtor concedes that the automatic stay of 11 U.S.C. § 362 does not extend to criminal proceedings filed against the debtor, 11 U.S.C. § 362(b)(1). The debtor contends, however, that a bad check repre-

sents a type of debt whereby the discharge should be put in issue civilly, pursuant to 11 U.S.C. § 523(a)(2)(A) or (B). The debtor further contends that 11 U.S.C. § 105(a) endowing the bankruptcy court with broad injunctive power to ensure compliance with the rehabilitative purpose of the Bankruptcy Code is applicable in a discharge setting, citing various cases.

The prosecutor contends that the criminal action was brought for the purpose of punishing criminal conduct of a felony level under the laws of the state of Washington. The prosecutor further contends that the state generally requests that restitution be made to victims of crime as one of various conditions of probation designed to rehabilitate felons; the state does not act as a debt collection agency nor does it directly represent victims of crimes.

The prosecutor finally contends that "The fundamental national policy against federal interference with state criminal prosecutions indicates that the court, on the facts of this case should decline to enjoin the state of Washington in this matter."

## III. DISCUSSION

### 1.

Development of recent case law relative to the relationship of bankruptcy and criminal prosecutions of debtors who have issued bad checks has resulted in divergent lines of authority. See definitive discussion in *"Criminal Prosecutions and Manipulative Restitution: The Use of State Criminal Courts for Contravention of Debtor Relief"* Kratch & Young, 1984 Ann. Surv.Bankr.L. 107.

A leading case holding that prosecutions to enforce payment of checks are essentially collection efforts by the state on behalf of creditors, is *In re Taylor*, 16 B.R. 323, 8 B.C.D. 692 (Bankr.D.Md.1981). The court in *Taylor* noted and distinguished *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which held that a bankruptcy court should not readily exercise its discretion to enjoin state court criminal prosecutions. See also *Holder v. Dotson*, 26 B.R. 789 (Bankr.M.D.Tenn.1982), where it was held that a debtor should not be forced to pay a dischargeable debt as restitution in subsequent criminal proceedings.

The prosecuting attorney for Kitsap County has also cited *Younger* wherein the Supreme Court reversed the District Court which had issued an injunction enjoining a state court prosecution. It should be noted, that *Younger* recognized that there are cases where an injunction may be issued, pursuant to 28 U.S.C. § 2283 which provides that a court of the United States may stay proceedings in a state court where, "expressly authorized by act of Congress, or necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The *Younger* court also noted a fourth exception whereby a party may show that prosecution in a state court will, if not enjoined, cause irreparable injury.

In the light of the foregoing, it would appear, in the abstract, that 11 U.S.C. § 105(a) authorizes, under appropriate circumstances, the issuance of an injunction to enjoin proceedings in state court which would impair the discharge. Assuming, *arguendo*, that this would include criminal proceedings, the question is whether or not this particular proceeding should be enjoined.

It is clear that the prosecutor intends that there be restitution if the criminal proceeding is successfully prosecuted. Such prosecution, incidentally, involves the greater criminal burden of proof, as distinguished from the civil burden inherent in § 523(a)(2). Despite cases such as *Taylor, supra,* and *Holder, supra,* the weight of authority would appear to be against issuing the injunction. See *U.S. v. Carson*, 669 F.2d 216 (5th Cir.1982). *Carson* was cited with approval in *Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982), which reversed a bankruptcy court decision enjoining a state court prosecution against the debtor for issuance of bad checks.

### 2.

Looking at what might happen if the prosecution were successful, in general, it

is held appropriate for courts to sanction imposition of financial obligations on the debtor as a condition of suspending imprisonment for the criminal behavior causing the debt. See *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), where the Supreme Court held that the due process and equal protection clauses of the 14th Amendment do not absolutely prohibit imposition of fines and probation conditioned on restitution.

A balance should be struck in considering the Supremacy Clause, Article VI, § 2, of the Constitution which has on occasion given overriding importance to the discharge or rehabilitative provisions of the Bankruptcy Act, *Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1972). As indicated by *Barnette v. Evans, supra,* the discharge provisions of the Bankruptcy Code are not intended to provide a privileged sanctuary for criminals. It is difficult to believe that it was the intention of Congress to relieve arsonists, embezzlers, or other criminals of being required by a court, as a condition of probation, to make restitution in as full a measure as possible to the victims of their criminal behavior.

On the facts of this case, it would appear that the prosecutor for Kitsap County, Washington has made a determination in the regular course of his duties, based upon an investigation, to prosecute the defendant. It so happens that the alleged criminal offense is one for issuing n.s.f. checks. It is probable that the importunities of creditor Loomis were not an insignificant factor in the transition from investigation to prosecution. This alone does not establish that the prosecutor's primary motivation was the desire to collect, on behalf of a private citizen, a debt based on an n.s.f. check. If there were such a motivation, the result here might be otherwise, see *Kratch and Young, supra.* However, there is no reason to assume that the prosecutor is arbitrarily exercising his powers. The evidence heard by the court is consistent with and supports the finding that the prosecutor's action is based on a bona fide

conclusion that a public purpose will be served thereby.

The application of the debtor for an order enjoining further prosecution for his having issued the bad checks in question should be DENIED.

It is so ORDERED.